ACCEPTED
03-14-00737-CV
3790936
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/15/2015 6:33:26 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00737-cv

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 12:23:00 PM
JEFFREY D. KYLE
Clerk

_____

# IN THE THIRD COURT OF APPEALS

# AUSTIN, TEXAS

_____

CHASE CARMEN HUNTER v. ELEANOR KITZMAN IN HER OFFICIAL

CAPACITY AS COMMISSIONER OF INSURANCE, JULIA RATHGEBER

IN HER OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE,

AND THE TEXAS DEPARTMENT OF INSURANCE

_____

## APPELLANT'S BRIEF WITHOUT ORAL ARGUMENT

_____

From Cause D-1-GN-13001957 In The 250th District Travis

County, Texas, The Honorable John K. Dietz Presiding

_____

**Chase Carmen Hunter,** *pro se*
**340 S. Lemon Ave. #9039**
**Walnut, CA 91789**
**Telephone: 707-706-3647**
**Facsimile: 703-997-5999**
**Chase_Hunter@yahoo.com**

- 1 -

**IDENTITY OF PARTIES**

Appellant: Chase Carmen Hunter

Appellees: ELEANOR KITZMAN IN HER OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE, JOHN/JANE DOE IN HIS/HER OFFICIAL CAPACITY AS INTERIM COMMISSIONER OF INSURANCE, OR AS COMMISSIONER OF INSURANCE, AND THE TEXAS DEPARTMENT OF INSURANCE

Counsel For Appellant:

Chase Carmen Hunter, *pro se*
340 S. Lemon Ave #9039
Walnut, CA 91789
Telephone: 707-706-3647
Facsimile: 703-997-5999

# TABLE OF CONTENTS

CERTIFICATION.........................................5

STATEMENT OF THE CASE..............................5-7

STATEMENT OF JURISDICTION..........................7-9

STATEMENT ON ORAL ARGUMENT...........................9

ISSUES PRESENTED..................................9-10

STATEMENT OF FACTS..................................11

    SUMMARY.........................................11

    DETAILS AND PROCEDURAL HISTORY...............11-12

ARGUMENT........................................12-14

PRAYER..........................................14-15

CERTIFICATIONS..................................16-17

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Connally V. General Construction Co.,

    269 U.S. 385, 391 (1926)........................13

Grayned v. City of Rockford,

    408 U.S. 104, 108 (1972)........................14

**STATE CASES**

In re Bernard, 993 S.W.2d 453, 454-544..............12

In re Nubine,

No. 13-08-507-CV, 2008 Tex. App. LEXIS 6534......12

**STATE STATUTES AND RULES**

Gov't Code 2001.054(c) et seq.........................6

Texas Rule of Civil Procedure

("TRCP") 145 (a)...............................9–14,16

TRCP 145 (d).....................................13,14

TRCP 165a(3)........................9,10,12,13,14

**CONSTITUTIONS**

Due Process Clause...............................<u>passim</u>

## CERTIFICATION.

I, Chase Carmen Hunter, state under penalty of perjury that the following facts and argument are true and correct.

_____     ___January 15, 2015___

## STATEMENT OF THE CASE.

1. Judge John K. Dietz ("Judge Dietz") is the presiding judge of the 250th District in Travis County District Court. His physical address is 1000 Guadalupe St. Austin, TX 78701.

2. Amalia Rodriguez-Mendoza ("Clerk") is the Clerk of the District Court in Travis County, Texas. Her physical address is 1000 Guadalupe St. Austin, TX 78701.

3. The Appellant, (herein referred to as "Hunter"), is not and never has been a resident of Texas. Hunter's only tie to the Appellees arises from Hunter's non-resident Texas insurance license. Hunter filed an Original Verified Petition for Declaratory Judgment ("Pet DJ") and three motions (collectively referred to as "Petition and Motions") with the Clerk in June

-5-

2013. <u>See</u> Appendix pp 1–79. The Pet DJ[1] seeks relief from the unlawful actions taken by Eleanor Kitzman ("Kitzman"), the then Commissioner of Insurance of the Texas Department of Insurance ("TDI"), John/Jane Doe, the incoming Commissioner of Insurance of TDI, and the TDI (referred to as "Appellees").

4. The Pet DJ[2] seeks a declaratory judgment that formally establishes that the Rules and Statutes relied upon by the Appellees are unconstitutionally vague, unconstitutionally vague as applied, have been misapplied, and have been misinterpreted and, as a result, the Official Order of the Texas Commissioner of Insurance, No. 2497, dated May 8, 2013, ("Order of Revocation") is not effective.

5. The Pet DJ[3] seeks a declaratory judgment that formally establishes that the Order of Revocation is not effective pursuant Gov't Code 2001.054(c) et seq.

6. The Pet DJ[4] seeks a declaratory judgment that formally establishes that the Order of Revocation is

---

[1] <u>See</u> Appendix pp 7–73
[2] <u>See</u> Appendix pp 7–73
[3] *supra*
[4] *supra*

void for any and all other relevant reasons including, but not limited to, fraud upon the court, extrinsic fraud, intrinsic fraud, common law fraud, constitutionality grounds, adverse to public policy, contrary to Texas laws, and contrary to federal laws.

7. The Clerk has refused to perform ministerial duties, has inserted into the court record documents that contain false statements, has refused to provide Hunter with services, and has therefore blocked the adjudication of Hunter's lawsuit in the Travis County District Court ("TCDC").

8. Judge Dietz has refused to act upon every motion Hunter filed with the TCDC and filed directly with Judge Dietz.

9. As a result, the Clerk and Judge Dietz have blocked Hunter's Pet DJ from moving forward beyond the ministerial event of being filed with the TCDC.

10. Judge Dietz entered an Order of Dismissal on August 25, 2014, due to want of prosecution.

11. But the record proves that Hunter's lawsuit was stalled only because the Clerk and Judge Dietz refused to perform ministerial duties.

**STATEMENT OF JURISDICTION.**

12. The Order of Dismissal ("Dismissal") was entered on August 25, 2014. Hunter was notified of this Dismissal by mail.

13. Hunter mailed her Motion to Reinstate ("MTR") to the TCDC on September 22, 2014, using USPS priority mail with tracking number 9114901189866871050039. This is a timely filing pursuant to Texas Rule of Appellate Procedure ("TRAP") 9.2(b)(1). The USPS records show that this MTR was delivered to the Clerk on September 24, 2014. The Third District Court of Appeal record 03-14-00641-cv contains a copy of the MTR filed with the Clerk; and it shows that the Clerk filed the MTR on September 26, 2014. See Appendix pp. 120-125

14. Hunter received no notice of a hearing scheduled pursuant to TRCP 165a(3).

15. Therefore, on October 23, 2014, Hunter faxed her MTR directly to Judge Dietz. See Appendix pp. 109-119. Hunter also mailed her MTR directly to Judge Dietz using USPS certified mail, restricted delivery with tracking number 70132630000059320601. The USPS records show that this MTR was delivered to Judge Dietz on October 28, 2014.

16. Hunter received no notice of a hearing scheduled pursuant to TRCP 165a(3).

17. No hearing was held on Hunter's MTR.

18. Hunter mailed her Notice of Appeal ("NOA") on November 23, 2014, to the Clerk. Hunter also filed her notice of appeal electronically with this Court on November 24, 2014. See Appendix p. 126. This is a timely filing of this NOA pursuant to TRAP 26.1(a)(3) and 25.1(a).

**ORAL ARGUMENT.**

19. Oral argument is not requested.

**ISSUES PRESENTED**

1) The Clerk and Judge Dietz have refused to perform ministerial duties (other than filing documents and entering the Dismissal for want of prosecution).

-9-

2) The Clerk refused to comply with Texas Rule of Civil Procedure ("TRCP") 145 (a) which sets forth that upon the filing of the affidavit [of indigency], "the clerk must docket the action, issue citation and provide such other customary services as are provided any party." And Judge Dietz refused to perform ministerial duties to respond to Hunter's motions asking that he direct the Clerk to perform her ministerial duties and to comply with TRCP 145(a).

3) After the Order of Dismissal was entered in the TCDC, Hunter filed a Motion for Reinstatement ("MFR") with the Clerk and also directly with Judge Dietz. Pursuant to TRCP 165a(3), the TCDC was required to hold a hearing on this MFR. But it did not.

## STATEMENT OF FACTS.

### SUMMARY

19. The Clerk refused to perform all ministerial duties except the filing of documents; and she inserted false documents into the TCDC record.

20. Judge Dietz has refused to act upon Hunter's motions filed with the Court and filed directly with Judge Dietz and dismissed Hunter's lawsuit for want of prosecution despite having known or should have known that the only reason why the lawsuit did not move forward is because both the Clerk and Judge

Dietz refused to perform the required ministerial duties that would have moved Hunter's lawsuit forward.

## DETAILS AND PROCEDURAL HISTORY

21. Hunter filed her Petition and Motions with the Clerk by United States Postal Service ("USPS"), pre-paid, first-class, USPS Tracking™ on June 4, 2013. See Appendix pp 1-79. The Petition and Motions were mailed to PO Box 1748, Austin TX 78767. The USPS tracking number for the mailing envelope is 9505500001113155000188. See Appendix p. 127

22. By telephone, an employee of the Clerk named Bari told Hunter that Hunter's Petition and Motions were filed on June 7, 2013; that an "assessment of fee" was entered in the Clerk's docket system on June 18, 2013; and that an "agreement letter" was entered in the Clerk's docket system on June 19, 2013. This "agreement letter" falsely states that Hunter agreed to pay the Clerk's filing fee. See Appendix p. 128

23. Hunter filed an affidavit of indigency with her Petition and Motions; and did not agree to pay the Clerk's filing fee. Since Hunter filed an affidavit

of indigency, the Clerk is required pursuant TRCP Rule 145(a) to provide Hunter with the same services provided any other person without charge. But she did not.

24. The Clerk did not contest Hunter's affidavit of indigency verbally or in writing.

25. Judge Dietz did not schedule and did not hold any hearings in the underlying cause even though he was required by statute to hold at least one hearing on Hunter's MTR. See TRCP 165a(3).

**ARGUMENT.**

26. The Clerk refused to perform her ministerial duties and refused to comply with TRCP Rules 145(a) and 145(d).

27. The remedy in such circumstances directs Hunter to attempt to resolve the issue directly with a district judge, explaining in a verified motion that the clerk is refusing to perform her ministerial duties. See In re Nubine No. 13-08-507-CV, 2008 Tex. App. LEXIS 6534, (Tex. App.-Corpus Christi Aug. 27, 2008, orig. proceeding)(mem. Op.)(per curiam); see also In re

<u>Bernard</u>, 993 S.W.2d 453, 454-544 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding)(O'Connor, J., concurring.)

28. Hunter filed a motion directly with Judge Dietz[5] and he did not respond to it.

29. The Clerk refused to provide services to Hunter. The Clerk will not answer her telephone when Hunter calls and will not respond to facsimiles Hunter sends.

30. The Clerk and Judge Dietz deprived Hunter of her rights under TRCP 145(a), under the Due Process clause of the United States Constitution, and under Hunter's human right to fair treatment, to access the court, to protection under the law, and to protection by the TCDC from the unlawful actions by the Appellees[6].

31. One of the fundamental principles of due process of law is fair notice to an ordinary person of what is required and what is prohibited. <u>See</u> <u>Connally V. General Construction Co.</u>, 269 U.S. 385, 391 (1926). TRCP Rules 145(a), 145(d), and 165a(3) clearly

_____

[5] <u>See</u> Appendix pp 80-94
[6] <u>See</u> Appendix pp 7-73

articulate that which is required of Hunter, of the Clerk and of Judge Dietz. But the Clerk and Judge Dietz refused to comply with these TRCP's, refused to enforce these TRCP's, and refused to act in accordance with Hunter's Due Process rights.

32. Due process requires that laws provide standards to prevent arbitrary and discriminatory enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). TRCP 145(a), 145(d), and 165a(3) provide clear standards but the Clerk has refused to comply with them, and this has prejudiced Hunter. And Judge Dietz has refused to respond to every motion Hunter filed with the Clerk and with Judge Dietz directly, including but not limited to, motions asking him to enforce TRCP(a) by directing the Clerk to comply with TRCP 145(a) and asking him to comply with TRCP 165a(3).

**PRAYER.**

33. Hunter respectfully requests that this Court take jurisdiction of this case, and that upon reviewing this matter: (1) grant this Petition, (2) reverse the

- 14 -

Order of Dismissal, (3) direct Judge Dietz to direct the Clerk to (a) issue citations in TCDC case D-1-GN-13001957, (b) cause service of process upon the defendants in TCDC case D-1-GN-13001957, (c) provide Hunter with all customary services provided any other party without charge, (d) provide Hunter with free access to http://www.idocket.com so that Hunter can view her case progress, or in the alternative, send Hunter a weekly statement by facsimile at 703-997-5999 that accurately reflects the activity of any cause pending in which Hunter is a party, (4) direct the TCDC to enter an order that transfers this lawsuit to this Court for adjudication since the TCDC has refused to comply with the United States Constitution and the aforementioned TRCP's and has refused to perform its ministerial duties to adjudicate this lawsuit since June 2013, (5) award Hunter her reasonable attorney's fees and costs, and (6) award Hunter such further relief to which she may be entitled.

Respectfully Submitted,

/s/ Chase Carmen Hunter

Chase Carmen Hunter
Appellant, pro se
340 S. Walnut Ave. #9039
Walnut, CA 91789
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## **CERTIFICATION**

I, Chase Carmen Hunter, certify that I have reviewed this petition and conclude that every factual statement in the petition is supported by competent evidence included in the appendix or record.

*cefth*

_____
Chase Carmen Hunter


## **CERTIFICATION**

I, Chase Carmen Hunter, swear under penalty of perjury that the documents shown in the appendix are true and accurate copies of those documents that are contained in the record in the underlying cause. I have received no documents related to the underlying cause other than Appendix pp 1, 7, 74, 77, 102, and 128. The Clerk will not answer the telephone and will not provide me with customary services "provided any party". So, I have not asked the Clerk to provide certified copies. Further, I am indigent and cannot afford to pay the Clerk for certified copies and the Respondents have refused to act in compliance with TRCP Rule 145(a), have refused to answer the telephone when I call, and have refused to respond to my facsimiles sent.

*cefth*

_____
Chase Carmen Hunter

**CERTIFICATION IN COMPLIANCE WITH TEX. R. APP. P
9.4(i)(2)(B) and 9.4(i)(3)**

I, Chase Carmen Hunter, certify that this Petition contains 1,815 words and 11 pages.

_ceftt_
_____
Chase Carmen Hunter

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Petition for Appeal and Motion was served upon the parties shown below as indicated:

Eleanor Kitzman, Julia Rathgeber, and the Texas
Department of Insurance
By email on January 15, 2015 at
ChiefClerk@tdi.state.tx.us
Facsimile: 512-490-1064

Cynthia A. Morales
Assistant Attorney General
By Email on January 15, 2015 at
Cynthia.Morales@texasattorneygeneral.gov

_ceftt_
_____
Chase Carmen Hunter

No. 03-14-00737-cv

_____

IN THE THIRD COURT OF APPEALS

AUSTIN, TEXAS

_____

CHASE CARMEN HUNTER v. ELEANOR KITZMAN IN HER OFFICIAL

CAPACITY AS COMMISSIONER OF INSURANCE, JULIA RATHGEBER

IN HER OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE,

AND THE TEXAS DEPARTMENT OF INSURANCE

---

APPENDIX TO APPELLANT'S BRIEF WITHOUT ORAL ARGUMENT

---

From Cause D-1-GN-13001957 In The 250th District Travis

County, Texas, The Honorable John K. Dietz Presiding

---

Chase Carmen Hunter, *pro se*
340 S. Lemon Ave. #9039
Walnut, CA 91789
Telephone: 707-706-3647
Facsimile: 703-997-5999
Chase_Hunter@yahoo.com

- 1 -

To the Honorable Justices of the Court:

The Appendix is attached.

Respectfully Submitted,

/s/ Chase Carmen Hunter

Chase Carmen Hunter
Appellant, pro se
340 S. Walnut Ave. #9039, Walnut, CA 91789
Tel: 707-706-3647, Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## CERTIFICATION

I, Chase Carmen Hunter, swear under penalty of perjury that the documents shown in the appendix are true and accurate copies of those documents that are contained in the record in the underlying court. I have received no documents related to the underlying cause other than Appendix pp 1, 7, 74, 77, 102, and 128.

_____
Chase Carmen Hunter

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Petition for Appeal and Motion was served upon the parties shown below as indicated:

Eleanor Kitzman, Julia Rathgeber, and the Texas Department of Insurance
By email on January 15, 2015 at
ChiefClerk@tdi.state.tx.us
Facsimile: 512-490-1064

Cynthia A. Morales

Assistant Attorney General
By Email on January 15, 2015 at
Cynthia.Morales@texasattorneygeneral.gov


_cefth_
_____
Chase Carmen Hunter



Cause No. D-1-GN-13-001957

CHASE CARMEN HUNTER,

        Plaintiff,

v.

ELEANOR KITZMAN IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF
INSURANCE, JOHN/JANE DOE IN
HIS/HER OFFICIAL CAPACITY AS
INTERIM COMMISSIONER OF
INSURANCE, OR AS COMMISSIONER
OF INSURANCE, AND THE TEXAS
DEPARTMENT OF INSURANCE, SERVE
GREG ABBOTT, THE ATTORNEY
GENERAL OF TEXAS,

        Defendants.

IN THE DISTRICT COURT OF

TRAVIS COUNTY, TEXAS

Filed In The District Court
of Travis County, Texas BD

JUN 07 2013

At _____ 10:50 A.M.
Amalia Rodriguez-Mendoza, Clerk

250th JUDICIAL DISTRICT

## ORIGINAL VERIFIED MOTION TO PROCEED IN *FORMA PAUPERIS*

TO THE HONORABLE JUDGE OF THIS COURT:

The above-named Plaintiff, herein referred to as "Hunter", hereby files this Original Verified

Motion To Proceed In *Forma Pauperis* and would respectfully show the Court as follows:

The Plaintiff asks for leave to file the attached Original Verified Petition for Declaratory

Judgment without prepayment of fees and to proceed in *forma pauperis.* The Plaintiff's Affidavit

in support of this motion is attached hereto.

APPENDIX P. 000001

Respectfully Submitted,

ee Hut

Chase Carmen Hunter
Plaintiff, pro se
PO Box 9075
Fredericksburg, VA 22403
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

# AFFIDAVIT OR DECLARATION
## IN SUPPORT OF MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

I, Chase Carmen Hunter , am the petitioner in the above-entitled case. In support of my motion to proceed *in forma pauperis*, I state that because of my poverty I am unable to pay the costs of this case or to give security therefor; and I believe I am entitled to redress.

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ 0 | $ n/a | $ 0 | $ n/a |
| Self-employment | $ 800 | $ n/a | $ 500 | $ n/a |
| Income from real property (such as rental income) | $ 1600 | $ n/a | $ 1600 | $ n/a |
| Interest and dividends | $ 0 | $ n/a | $ 0 | $ n/a |
| Gifts | $ 50 | $ n/a | $ 0 | $ n/a |
| Alimony | $ 0 | $ n/a | $ 0 | $ n/a |
| Child Support | $ 0 | $ n/a | $ 0 | $ n/a |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0 | $ n/a | $ 0 | $ n/a |
| Disability (such as social security, insurance payments) | $ 0 | $ n/a | $ 0 | $ n/a |
| Unemployment payments | $ 0 | $ n/a | $ 0 | $ n/a |
| Public-assistance (such as welfare) | $ 0 | $ n/a | $ 0 | $ n/a |
| Other (specify): _____ | $ 0 | $ n/a | $ 0 | $ n/a |
| **Total monthly income:** | $ 2450 | $ n/a | $ 2100 | $ n/a |

2. List your employment history for the past two years, most recent first. (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross monthly pay |
|---|---|---|---|
| self | PO Box 9075 Fredbrg, VA | 2001-present | $ 800 |
| | | | $ |
| | | | $ |

3. List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross monthly pay |
|---|---|---|---|
| n/a | | | $ |
| | | | $ |
| | | | $ |

4. How much cash do you and your spouse have? $ 40
   Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial institution | Type of account | Amount you have | Amount your spouse has |
|---|---|---|---|
| Wells Fargo | checking | $ 6 dollars | $ n/a |
| | | $ | $ |
| | | $ | $ |

5. List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.

☒ Home 225,000 -
Value __homestead__

☒ Other real estate
Value __110,000__

☒ Motor Vehicle #1 '07 Suzuki XL7
Year, make & model _____
Value __8900__

☐ Motor Vehicle #2 n/a
Year, make & model _____
Value _____

☐ Other assets none
Description _____
Value _____

6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| n/a | $ | $ |
| | $ | $ |
| | $ | $ |

7. State the persons who rely on you or your spouse for support.

| Name | Relationship | Age |
|---|---|---|
| self | n/a | n/a |
| none | n/a | n/a |
| none | n/a | n/a |

8. Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, or annually to show the monthly rate.

| | You | Your spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home) Are real estate taxes included? ☒ Yes ☐ No  Is property insurance included? ☒ Yes ☐ No | $ 1250 | $ n/a |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ 200 | $ n/a |
| Home maintenance (repairs and upkeep) | $ 100 | $ n/a |
| Food | $ 50 | $ n/a |
| Clothing | $ 5 | $ n/a |
| Laundry and dry-cleaning | $ 10 | $ n/a |
| Medical and dental expenses | $ 40 | $ n/a |

|                                                                       | You      | Your spouse |
|-----------------------------------------------------------------------|----------|-------------|
| Transportation (not including motor vehicle payments)                 | $ 20     | $ n/a       |
| Recreation, entertainment, newspapers, magazines, etc.                | $ 15     | $ n/a       |
| Insurance (not deducted from wages or included in mortgage payments)  |          |             |
|     Homeowner's or renter's                        | $ 0      | $ n/a       |
|     Life                                           | $ 0      | $ n/a       |
|     Health                                         | $ 0      | $ n/a       |
|     Motor Vehicle                                  | $ 85     | $ n/a       |
|     Other: _____                        | $ 0      | $ n/a       |
| Taxes (not deducted from wages or included in mortgage payments)      |          | n/a         |
|     (specify): car tax                            | $ 40     | $           |
| Installment payments                                                  |          |             |
|     Motor Vehicle                                  | $ 260    | $ n/a       |
|     Credit card(s)                                 | $ 200    | $ n/a       |
|     Department store(s)                            | $ 0      | $ n/a       |
|     Other: _____                        | $ 0      | $ n/a       |
| Alimony, maintenance, and support paid to others                      | $ 0      | $ n/a       |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ 0 | $ n/a |
| Other (specify): _____                                      | $ 0      | $ n/a       |
| **Total monthly expenses:**                                           | $ 2275   | $ n/a       |

IN WITNESS, Chase Carmen Hunter has signed this Affidavit:

_J CC Huh_
Chase Carmen Hunter

Commonwealth of Virginia
City/County of Spotsylvania to-wit:
Subscribed and sworn to before me this 25 day of May 20 13 , by Chase Carmen Hunter
My commission expires:
Registration Number:

_Lindsey Nicole Shipe_

LINDSEY NICOLE SHIPE
NOTARY PUBLIC
REG. #7550307
MY COMMISSION EXPIRES
05/31/17
COMMONWEALTH OF VIRGINIA

APPENDIX P. 000006



Cause No. D-1-GN-13-001957

| | |
|---|---|
| CHASE CARMEN HUNTER, | IN THE DISTRICT COURT OF |
| Plaintiff, | |
| v. | TRAVIS COUNTY, TEXAS |
| ELEANOR KITZMAN IN HER OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE, JOHN/JANE DOE IN HIS/HER OFFICIAL CAPACITY AS INTERIM COMMISSIONER OF INSURANCE, OR AS COMMISSIONER OF INSURANCE, AND THE TEXAS DEPARTMENT OF INSURANCE, SERVE GREG ABBOTT, THE ATTORNEY GENERAL OF TEXAS, | |
| Defendants. | 250th JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas
BD

JUN 07 2013

At _____ 10:50 A.M.
Amalia Rodriguez-Mendoza, Clerk

## ORIGINAL VERIFIED PETITION FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF THIS COURT:

The above-named Plaintiff, herein referred to as "Hunter", hereby files this Original Verified Petition for Declaratory Judgment and would respectfully show the Court as follows:

**DISCOVERY CONTROL PLAN**

1. Hunter has elected to conduct discovery under Level 2 or Rule 190.3, Texas Rules of Civil Procedure.

- 1 -

APPENDIX P. 000007

## THE PARTIES.

### The Plaintiff.

2. Chase Carmen Hunter ("Hunter") is a resident of Virginia, has never resided in Texas, and has spent less than 72 hours in Texas during the past twenty (20) years. Hunter has no property or business locations in Texas. Hunter has no contracts with any private Texas entities and is not a party to any written or oral contracts that are established under or based on Texas laws except any agreements that may exist between Hunter and the Defendants as a result of Hunter obtaining a Texas non-resident insurance agent license ("License"). Hunter has no ties to Texas other than communications sent and received electronically. She has been a licensed Virginia resident insurance agent in good standing for nearly twenty years. She has been a licensed Texas non-resident insurance agent since 2003. The Texas Department of Insurance ("TDI") issued and renewed Hunter's License.

### The Defendants.

3. Eleanor Kitzman ("Kitzman") is the Commissioner of Insurance ("Commissioner") for the TDI. The Texas Constitution established the Commissioner's position for the purpose of regulating insurance. Upon information and belief, she has not been reappointed by the Governor of Texas and has not been confirmed by the Texas Senate. She will no longer be the Commissioner on June 1, 2013.

4. Kitzman is sued in her official capacity as the Texas Commissioner of Insurance. She can be served at the Texas Department of Insurance, 333 Guadalupe, Austin, Travis County, Texas.

- 2 -

5. John/Jane Doe is the person who will replace Kitzman, temporarily and/or permanently, when her term is expected to expire at the end of May 2013. Upon information and belief, the Governor of Texas has not appointed her replacement yet.

6. TDI is a Texas state government agency that regulates insurance.

7. Greg Abbott is the Attorney General of Texas. He can be served at the Price Daniel Building, 209 West 14th St, 8th Floor, Austin, Travis County, Texas.

8. All named defendants will be referred herein collectively as "Defendants".

## JURISDICTION AND VENUE.

9. This lawsuit is brought under the Texas Uniform Declaratory Judgment Act,Tex. Civ. Prac. & Rem Code § 37.003, et seq. and Texas Gov't Code § 2001.038 et seq. This Court has subject matter jurisdiction pursuant to Tex. Const. Art. 5, § 8 and Tex. Gov't Code §§ 24.007 & 24.008. Venue is proper in Travis County District Court pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) and Texas Gov't Code § 2001.038(b). Tex. Ins. Code Ann ("TIC") § 36.101 establishes that TDI is subject to Texas Gov't Code §§ 2001 and 2002.

## NATURE OF LAWSUIT.

10. First and foremost, this petition clearly sets forth that the Defendants have abused their authority under color of law to commit crimes against the United States of America, against Texas, and against Hunter. The Defendants abused their authority to defame Hunter and to tortiously interfere in Hunter's business. The Defendants have violated the laws of this country, the laws of Texas, the United States Constitution, the Texas Constitution, and Hunter's constitutional and human rights.

- 3 -

11. Within three days after Hunter filed a complaint against Whitney Ellis ("Ellis"), the counsel of record for TDI, with the State Bar of Texas on about May 13, 2013, which alleged that Ellis had violated many of the Disciplinary Rules of Professional Conduct in the underlying cause, Ellis filed a motion to dismiss the underlying cause against Hunter in the State Office of Administrative Hearings ("SOAH").

12. Ellis is not a defendant and this petition is not directed at Ellis. She is affiliated with the Defendants because she is the counsel of record for the Defendants in the SOAH that underlies this lawsuit.

13. This dispute would not be before this Court if the Defendants did not have the full cooperation of the Administrative Law Judge ("ALJ") in the SOAH. The ALJ acted with absolute disregard for the United States Constitution, the Texas Constitution, the laws, the Rules, and the Statutes relevant to the underlying case. The ALJ and Ellis violated many of the Disciplinary Rules of Professional Conduct, and they fabricated a series of false circumstances against Hunter to, *inter alia*, issue an interim SOAH order granting discovery sanctions against Hunter. The ALJ stated for the first time on the last day of the hearing on the merits, after TDI rested its case-in-chief, that these discovery sanctions barred Hunter from testifying, barred her from any right to be granted the many motions that she made that the ALJ take official/judicial notice of United States and Texas laws and constitutions, barred her from any right to be granted the many motions she made that the ALJ take official notice of relevant facts and Rules, and barred her from being allowed to offer rebuttal testimony and evidence. The ALJ entered a Proposal For Decision ("PFD")

- 4 -

in the SOAH that proposed that Hunter's License be revoked that did not include a ruling on each of Hunter's Proposed Findings of Fact ("PFF").[1]

14. To further demonstrate the depth of this injustice against Hunter: even the Clerk of the SOAH ("Clerk") was acting in violation of laws to prejudice Hunter. As just one example, the Clerk violated many laws and did not scan Transcripts[2] that were filed by the Defendants into the Clerk's online document retrieval system. The Defendants explicitly requested that the Clerk hide parts of the record from Hunter in this manner. Hunter filed many motions in the SOAH to unseal the record. TDI filed responses to said motions with the SOAH in which it stated that if Hunter wanted to see the full SOAH record, she could travel from Virginia to Texas to see it or pay TDI for it.

15. This is a lawsuit seeking a declaratory judgment that formally establishes that the

---

[1] When the PFD was drafted by the ALJ, his ruling on each of Hunter's proposed findings was a general statement that Hunter filed proposed findings, that her proposed findings lacked merit, that he would not rule on Hunter's proposed findings, and that he dismissed Hunter's proposed findings without further consideration for these reasons

[2] The use of the word "Transcript" or "Transcripts" refers only to the Transcripts of the hearing on the merits in the SOAH cause 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.c on September 11th and 13th, 2012.

- 5 -

Rules[3] set forth herein are unconstitutionally vague, unconstitutionally vague as applied, have been misapplied, and have been misinterpreted. As a result, the Official Order of the Texas Commissioner of Insurance, No. 2497, dated May 8, 2013, ("Order of Revocation") is not effective.

16. This is a lawsuit seeking a declaratory judgment that formally establishes that the Statutes[4] set forth herein are unconstitutionally vague, unconstitutionally vague as applied. have been misapplied, and have been misinterpreted. As a result, the Official Order of the Texas Commissioner of Insurance, No. 2497, dated May 8, 2013, ("Order of Revocation") is not effective.

17. This lawsuit is seeking a declaratory judgment that formally establishes that the Order of Revocation is not effective pursuant Gov't Code 2001.054(c) et seq.

18. This lawsuit is seeking a declaratory judgment that formally establishes that the Order of Revocation is void for any and all other relevant reasons including, but not limited to, fraud upon the court, extrinsic fraud, intrinsic fraud, common law fraud,

---

[3] "Rules" refers Title 28 of the Texas Administrative Code (TAC). The TAC is a compilation of all state agency rules in Texas. There are 16 titles in the TAC. Each title represents a subject category and related agencies are assigned to the appropriate title. Title 28 is assigned to TDI. Tex. Gov't Code 2001.003(6) et seq. defines "Rule" as: (A) means a state agency statement of general applicability that:(i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency; (B) includes the amendment or repeal of a prior rule; and (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

[4] "Statutes" refers to The Texas Government Code, the Texas Insurance Code ("TIC"), and the Texas Business and Commerce Code referenced herein.

- 6 -

APPENDIX P. 000012

constitutionality grounds, adverse to public policy, contrary to Texas laws, and contrary to federal laws..

19. This is not a petition initiating judicial review. This Court's review of the issues is *de novo* under the Texas Uniform Declaratory Judgment Act ("TUDJA"). The issues set forth herein arise from knowledge Hunter gained of the Defendants' Practices of misinterpreting, misapplying, and fabricating Rules; from the Defendants' Practices of promulgating Rules that are unconstitutionally vague and unconstitutionally vague as applied, and from the Defendants' reliance upon Statutes and Rules that are unconstitutionally vague and unconstitutionally vague as applied. These Practices were revealed during the hearings held in a contested case and in the Order of Revocation. Tex. Gov't Code 2001.176(b)(3) stipulates that the "filing of the petition vacates a state agency decision for which trial *de novo* is the manner of review authorized by law".

20. Hunter does not waive her constitutional and statutory rights to, *inter alia*, 1) file a Motion to Rehear[5] and to 2) file a Petition for Judicial Review[6]. Tex. Gov't Code Ann. § 2001.038(d) permits Hunter to simultaneously defend the underlying cause and to file this petition.

21. Hunter does not waive her right to enjoy the statutory automatic reversal of this Order of Revocation.[7]

22. This petition is written in a continuing nature. Hunter will not adopt by reference any section of the petition into another section because all sections, subsections, and

---

[5] See Tex. Gov't Code 2001.145 et seq.

[6] See Tex. Gov't Code 2001.176 et seq.

[7] See Tex. Gov't Code 2001.176(b)(3)

APPENDIX P. 000013

divisions of any kind, by any title given, are continuing in nature. All divisions are automatically adopted by reference into any and all other divisions.

23. Hunter respectfully apologizes to this Court if it takes issue with the length of this petition. Hunter is not a lawyer. Hunter has tried to find legal representation to no avail. Hunter truly believes this petition includes only that which is a required element.

## THE FACTS AND STATEMENT OF THE CASE.

### General.

24. TDI filed a Notice of Hearing ("NOH") with the SOAH in December 2011. A hearing was scheduled in about January or February 2012 with the SOAH for September 2012. Hearings were held on September 11th and 13th, 2012.

25. There is no other case in the history of TDI enforcement proceedings in which the Defendants filed an NOH with the SOAH to enforce advertising violation allegations.

26. There is no other case in the history of TDI enforcement proceedings in which the Defendants revoked a license issued by TDI due to allegations of advertising violations.

27. The Defendants' witnesses in the SOAH, Brenda Luu ("Luu") and Jack Evins ("Evins"), did not recommend that Hunter's License be revoked.

### Allegations Against Hunter.

28. TDI made twelve (12) allegations ("Allegations") against Hunter in its NOH. Allegations 1 and 2 arise from a civil dispute between Hunter and an Illinois

- 8 -

Company located in Utah with no locations in Texas.[8] Allegations 3-12 arise from a civil dispute between Hunter and Lester Kalmanson Agency, Inc., ("LKAI") a Florida Corporation with no locations in Texas and from a complaint LKAI filed against Hunter with TDI in October 2009 ("October 2009 Complaint")[9]. Hunter, the Illinois Company, and LKAI are business competitors who offer liability insurance to people who own dogs. The Allegations are as follows:

29. **Allegation 1:** Hunter has misappropriated, converted to the license holder's own use, or illegally withheld m[sic] money belonging to an insurer, as contemplated by TIC § 4005.101(b)(4).

30. **Allegation 2:** Hunter engaged in fraudulent or dishonest acts or practices, as contemplated by TIC § 4005.101(b)(5)

31. **Allegation 3:** Hunter has advertised and solicited insurance contracts in a manner which directly or indirectly disparages competitors, their policies, services or business methods and unfairly disparages or minimizes competing methods or marketing insurance, as contemplated by 28 Tex Admin. Code Ann ("TAC") § 21.110(a) which states:

> "An advertisement may not directly or indirectly unfairly disparage competitors, their policies, services, or business methods, and may not unfairly disparage or minimize competing methods of marketing insurance." See 28 TAC § 21.110(a)

32. **Allegation 4:** Hunter has advertised and solicited insurance contracts, in a manner greater than advertising the mere availability of such coverage, under a surplus lines carrier's name, as contemplated by TIC § 981.001(b)(6) which states:

---

[8] This will be discussed in more detail later.

[9] This will be discussed in more detail later.

- 9 -

APPENDIX P. 000015

"The transaction of surplus lines insurance is a subject of concern and it is necessary to provide for the regulation, taxation, supervision, and control of these transactions and the practices and matter related to these transactions by: (6) protecting authorized insurers, which under the laws of this state must meet strict standards relating to the regulation and taxation of the business of insurance, from unfair competition by unauthorized insurers." See TIC § 981.001(b)(6);

33. **Allegation 5:** Hunter has advertised and solicited insurance contracts in a manner which directly or indirectly makes an unfair or incomplete comparison of policies, benefits, dividends, or rates, or compares incomparable policies, as contemplated by 28 TAC § 21.111(a) which states:

"An advertisement may not directly or indirectly make an unfair or incomplete comparison of policies, benefits, dividends, or rates, or compare noncomparable policies." See 28 TAC § 21.111(a);

34. **Allegation 6:** Hunter has advertised and solicited insurance contracts in a manner that is not truthful or is misleading either in fact or implication, as contemplated by 28 TAC § 21.103(a) which states:

"It is required that advertisements be truthful and not misleading either in fact or in implication." See 28 TAC § 21.103(a);

35. **Allegation 7:** Hunter has advertised and solicited insurance contracts in a manner that omits information, gives false implications or impressions, is misleading or deceptive or has the tendency or capacity to be misleading or deceptive, as contemplated by 28 TAC § 21.112 which states:

"Failure to abide by §§ 21.101 – 21.122 of this division (relating to Insurance Advertising) is prohibited. An omission of information, false implication, or impression which is misleading or deceptive or has the tendency or capacity to be misleading or deceptive is prohibited. The requirements of this division apply to either or both insurers and agents irrespective of whether acts or practices are

- 10 -

APPENDIX P. 000016

performed directly or indirectly by the insurers or agents or in conjunction with or through non-insurers or non-agents"; See 28 TAC § 21.112

36. **Allegation 8:** Hunter has advertised and solicited insurance contracts in a manner in which the full licensed name of the insurer is not stated in each invitation to inquire and invitation to contract, as contemplated by 28 TAC § 21.104(a)(1) which states:

> "An advertisement must identify the person or entity responsible for the advertisement. (1) The full licensed name of the insurer is required to be stated in each of its invitation to inquire and invitation to contract advertisements, including the portion of the advertisement to be returned to the insurer or agent, unless the portion to be returned is delivered as a form detachable from another form containing the insurer's full licensed name. The full licensed name must appear at or before the first appearance of any shortened or substitute name in the body of the text, which shortened or substitute name may be indicated as representing the insurer thereafter in the advertisement." See 28 TAC § 21.104(a)(1)

37. **Allegation 9:** Hunter has advertised and solicited a premium for a policy without disclosing the exact coverage to which the advertised premium pertains, as contemplated by 28 TAC § 21.106(a) which states:

> "No advertisement may state a premium for a policy that does not apply to the exact coverage advertised." See 28 TAC § 21.106(a)

38. **Allegation 10:** Hunter has advertised or quoted a premium without clearly identifying the class or risk to which the advertised premium pertains, as contemplated by 28 TAC § 21.106(b) which states:

> "If a premium is quoted in an advertisement that does not apply to all classes of risk solicited, the class or classes to which it applies must be identified." See TAC § 21.106(b)

39. **Allegation 11:** Hunter has advertised and solicited insurance contracts by referencing optional endorsements, riders or other benefits available without clearly

- 11 -

APPENDIX P. 000017

disclosing the additional cost associated, in close conjunction, as contemplated by 28 TAC § 21.106(c) which states:

"Advertisements referencing optional endorsements, riders or other benefits available at an additional cost, shall disclose the fact of additional cost." See TAC § 21.106(c); and

40. **Allegation 12:** Hunter has advertised and solicited insurance contracts using statistics or citations without clearly and completely identifying or otherwise making apparent the source, in close conjunction, as contemplated by 28 TAC § 21.108(b) which states:

"The source of statistics or citations used in an advertisement shall be identified or made apparent in the advertisement. Such source must include the publication name and date. A source shall not be more than five years old unless the advertiser certifies to the department through a statement in the transmittal letter that is required to be provided pursuant to TAC § 21.120(a) of this division (relating to Filing for Review) that the source is the most recent available." See TAC § 21.108(b)

41. 28 TAC § 21.120(a) states:

"An advertisement required to be submitted or submitted voluntarily by an insurer licensed to do business in Texas shall be accompanied by a transmittal letter addressed to the Advertising Unit, Texas Department of Insurance, 333 Guadalupe, Mail Code 111-2A, Austin, Texas 78701, or P.O. Box 149104, Austin Texas 78714-9104. The transmittal letter shall contain the following information:" See 28 TAC § 21.120(a)

42. 28 TAC § 21.120(e) states:

"The following rules require that advertisements be filed with the department for review at or prior to use:

(1) §3.1707 of this title (relating to Advertising, Sales and Solicitation Materials; Filing Prior to Use), regarding viatical and life settlement contracts;

- 12 -

APPENDIX P. 000018

(2) §3.3313 of this title (relating to Filing Requirements for Advertising), regarding Medicare supplement insurance;

(3) §3.3838 of this title (relating to Filing Requirements for Advertising), regarding long-term care insurance; and

(4) §11.603 of this title (relating to Filings), regarding certain Medicare HMO contracts.

**The Defendants Misinterpreted And Misapplied Tex. Gov't Code § 2001.0056 et. seq. And Tex. Gov't Code 2001.144 et seq.**

43. The Defendants misinterpreted and misapplied Tex. Gov't Code § 2001.056 et seq. which allows for the informal disposition of a contested case which is as follows: "Unless precluded by law, an informal disposition may be made of a contested case by:

(1) stipulation;

(2) agreed settlement;

(3) consent order; or

(4) default."

44. In the SOAH, Hunter filed Respondent's Motion That The Counsel of Record For the Texas Department of Insurance And The Administrative Law Judge Cease Their Crimes Against The United States And Against This Respondent And Mutually Agree To Immediately Dismiss This Case With Prejudice ("Motion Cease Crimes And Dismiss") on about May 13, 2013. Attached to this Motion Cease Crimes And Dismiss was a complaint Hunter filed against Ellis with The Office of Chief Disciplinary Counsel of the State Bar of Texas.

45. In the SOAH, Hunter filed Respondent's Supplement To Motion That The counsel of Record For the Texas Department of Insurance And The Administrative Law Judge Cease Their Crimes Against The United States And Against This Respondent And

- 13 -

Mutually Agree To Immediately Dismiss This Case With Prejudice ("Supplement Motion Cease Crimes And Dismiss") on about May 14, 2013. Attached to this Supplement Motion Cease Crimes And Dismiss was a supplement to the complaint Hunter filed against Ellis with The Office of Chief Disciplinary Counsel of the State Bar of Texas.

46. In the SOAH, TDI did not oppose the Motion Cease Crimes And Dismiss and did not oppose Supplement Motion Cease Crimes And Dismiss (collectively referred to as "Motions Cease Crimes And Dismiss")

47. In the SOAH, TDI filed a Motion To Dismiss on about May 17, 2013. This Motion To Dismiss indicates that TDI no longer needs the services of the SOAH because TDI entered an Order of Revocation on about May 9, 2013.

48. The ALJ has failed to respond to Hunter's Motions Cease Crimes and Dismiss and has failed to respond to TDI's Motion To Dismiss.

49. The deadline for Hunter to file her Motion To Rehear with Kitzman is about June 1, 2013. The Order of Revocation is not final pursuant Tex. Gov't Code 2001.144 et seq.

50. Therefore, TDI's Motion To Dismiss filed in the SOAH only two (2) days after Hunter filed her Motions Cease Crimes And Dismiss and before the Order of Revocation is final, constitutes an "agreed settlement" under Tex. Gov't Code § 2001.056(2).

51. It is an unfair, immoral, and unjust for the Defendants to misinterpret and misapply Tex. Gov't Code §§ 2001.056(2) and 2001.144 et seq. to enter into an agreed settlement without also establishing in writing that an "agreed settlement" had been reached and without also vacating the Order of Revocation.

- 14 -

52. This Court is asked to declare that the Defendants' Motion To Dismiss filed with the SOAH on about May 17, 2013, constitutes an "agreed settlement" under Tex. Gov't Code § 2001.056(2).

**General Statement Regarding Assertions That The Rules and Statutes Related to Allegations 3-12 Are Unconstitutionally Vague, Unconstitutionally Vague As Applied, and Unconstitutional Vague Because They Are Overbroad.**

53. Luu and Evins are employed by TDI. They testified on behalf of the Defendants in the SOAH cause 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.c regarding Allegations 3-12. They do not understand the relevant Statutes and Rules[10]. If the Defendants' employees, who are responsible for conducting reviews of insurance advertising do not understand the relevant Statutes and Rules, then there can be no expectation that an ordinary person or a person of average intelligence could also understand the Statutes and Rules. There can be no expectation that a person with above-average intelligence could understand the Defendants' interpretations of the Rules and Statutes because the Defendants hid their interpretations from Hunter and because these interpretations are grossly erroneous.

**Tex. Gov't Code § 2001.054(c) et seq., TIC § 541.102, and TIC § 541.104**

54. Tex. Gov't Code § 2001.054(c) et seq. is unconstitutionally vague, has been misinterpreted and misapplied by the Defendants, and Hunter has suffered as a result. Tex. Gov't Code § 2001.054(c) et seq. is as follows:

---

[10] Their misunderstandings, misinterpretations, and misapplications are discussed in more detail later.

- 15 -

"A revocation, suspension, annulment, or withdrawal of a license is not effective unless, before institution of state agency proceedings:

(1) the agency gives notice by personal service or by registered or certified mail to the license holder of facts or conduct alleged to warrant the intended action; and

(2) the license holder is given an opportunity to show compliance with all requirements of law for the retention of the license."

55. The Defendants did not give notice to Hunter, the license holder, of its intention to revoke her license prior to filing their NOH and did not give Hunter an opportunity to show compliance with all requirements of law for retention of the license before they filed the NOH.

56. The Defendants misinterpreted and misapplied Tex. Gov't Code § 2001.054(c)(1). The Defendants made only unsubstantiated allegations directed at Hunter in October 2009 during an advertising review which Hunter received by email. These allegations were not based in fact or law.

57. The Defendants made no mention of Allegations 1 and 2 prior to filing their NOH. In fact, the Defendants investigated the issues related to Allegations 1 and 2 in 2010, took no action against Hunter and demanded no action by Hunter, took action against another party and demanded action by another party, and closed the investigation in February 2011.

58. The Defendants misinterpreted Tex. Gov't Code § 2001.054(c)(2). The Defendants did not draft written recommendations regarding ways Hunter could show compliance with the Defendants' misinterpretation of the relevant Rules until August 2012. The Defendants never sent these written recommendations to Hunter before, during or after filing its NOH and adjudicating it in the SOAH for sixteen (16) months.

- 16 -

APPENDIX P. 000022

These recommendations drafted in August 2012 were used as a hearing exhibit in the SOAH in September 2012, which is the first time Hunter became aware of the existence of written recommendations. Luu testified in the SOAH on September 11, 2012, that she drafted the recommendations in August 2012 upon the request of a lawyer. These recommendations relate only to Allegations 3-12.

59. Hunter cannot be expected to comply with "all requirements of law" if the Defendants' Allegations 1-12 are not based in fact, not based on the laws, not based on the plain meaning of the laws, not based on the correct application of the laws, conflict with the laws of Texas and the United States and conflict with the Texas Constitution and the United States Constitution.

60. The Defendants misinterpreted Tex. Gov't Code § 2001.054(c) et. seq to believe that they were not required to apply it to the underlying cause.

61. The Defendants misinterpreted Tex. Gov't Code § 2001.054(c) et. seq to erroneously believe that they were required to institute "state agency proceedings" by filing an NOH with the SOAH before issuing the Order of Revocation.

62. However, the Defendants failed to factor into their interpretation of Tex. Gov't Code § 2001.054(c) et. seq the fact that TIC § 541.004 establishes that any enforcement

- 17 -

under the Rules for advertising violations (Allegations 3 and 5-12[11]) **must** be brought in district court in Travis County. The SOAH is not the district court in Travis County.

63. Further, TIC § 541.102 states that the department "**shall** issue and serve on the alleged [advertising] violator 1) a statement of the charges; and 2) a notice of the hearing on the charges. This hearing is an informal hearing in that it does not require strict pleading." The Defendants misinterpreted Tex. Gov't Code § 2001.054(c) et. seq. because TIC § 541.102 required the Defendants to serve a "statement of charges" upon Hunter but they did not. The only notice Hunter received was the NOH in December 2011. The Defendants misinterpreted TIC § 541.102 to erroneously believe that an NOH is a "statement of charges".

64. TIC § 541.102 required the Defendants to conduct an "informal hearing" that does not require strict pleading. But they did not. The Defendants misinterpreted "informally and without the burden of strict pleading" to erroneously believe an adjudication involving a Texas ALJ at the SOAH is informal and does not require strict pleading. The state agency proceedings at the SOAH are not informal, the SOAH has its own established set of written rules which must be followed, and the SOAH requires strict pleading. The fact is that the underlying SOAH cause was adjudicated for over sixteen (16) months and the underlying SOAH record has about

---

[11] The Defendants have erroneously classified Allegation 4 as an advertising violation. But Allegation 4 relies upon a Statute that does not relate to advertising in any way. The Defendant's witness, Brenda Luu, testified at the SOAH hearings regarding Allegation 4. Her testimony revealed that she has a very definite misunderstanding of the Statute. For this reason, this petition may refer to Allegation 4 as an allegation of an advertising violation. But if the Defendants sought to enforce Allegation 4 as an advertising violation, they were required to seek enforcement in the same manner as Allegations 3 and 5-12 which rely upon Rules related to advertising.

- 18 -

APPENDIX P. 000024

160 filings and over 3000 pages. The Defendants misinterpreted TIC § 541.102 because there was nothing informal about the SOAH proceedings and there could have been no expectation that the SOAH proceedings would be informal or that they would not require strict pleading.

65. The requirements of Tex. Gov't Code § 2001.054(c) et seq. that the Defendants institute "state agency" proceedings was misinterpreted and misapplied to erroneously believe that the Defendants were not required to comply with the mandatory conditions found in TIC § 541.102.

66. The Defendants misinterpreted and misapplied Tex. Gov't Code § 2001.054(c) et seq. and treated it as if it nullified relevant Statutes and Rules. Gov't Code § 2001.001 is as follows: "[i]t is the public policy of the state through this chapter to: (1) provide minimum standards of uniform practice and procedure for state agencies;" The phrase "minimum standards" establishes that the Defendants misinterpreted and misapplied the Statutes and Rules when it used Gov't Code § 2001 et seq. to establish its maximum standards in the underlying cause and when they relied upon Gov't Code § 2001.054(c) et seq. to nullify other relevant mandatory Statutes and Rules.

67. Gov't Code § 2001.054(c) et seq. is unconstitutionally vague because It is not written in such a way as to clearly establish the Defendants' obligations. It does not clearly establish that it does not replace the Rules, the Statutes, and the United States Constitution (Fifth and Fourteenth Amendments).

68. Hunter cannot be expected to know how to avoid penalties, prosecution, persecution, loss of liberty, loss of property, and loss of her human rights at the

- 19 -

hands of the Defendants if the relevant Rules and Statutes are unconstitutionally vague.

69. If the relevant Statutes and Rules are written in such a way that the Defendants are unable to correctly interpret and apply them, then the relevant Statutes and Rules are unconstitutionally vague. The first fundamental principle of enforcement of the Statutes and Rules requires that the enforcer, the Defendants, be able to understand the plain meaning of the Statutes and Rules and correctly apply the Statutes and Rules to facts without interpretive discretion.

**Tex. Gov't Code Ann. §§ 2001.141(b) and 2001.141(e)**

70. The Order of Revocation did not contain findings of fact and conclusions of law separately stated as is required by Tex. Gov't Code Ann. § 2001.141(b).

71. The Defendants misinterpreted Tex. Gov't Code Ann. § 2001.141(b) to erroneously believe that it did not apply to these circumstances.

72. The Order of Revocation did not include a ruling on each proposed finding which is required pursuant Tex. Gov't Code Ann. § 2001.141(e). Hunter timely filed her Proposed Findings of Fact ("PFF") and conclusions of law with the SOAH in about November 2012.

73. The Defendants misinterpreted Tex. Gov't Code Ann. § 2001.141(e) to erroneously believe that this Statute does not apply to these circumstances. The Defendants filed the NOH with the SOAH and the SOAH was the only tribunal that had taken jurisdiction[12] and the only tribunal in which Hunter was able to file her PFF. But pursuant the Rules, Hunter filed a copy of all documents she filed in the underlying

---

[12] The SOAH took jurisdiction in error. This subject will be expanded upon in a Petition for Judicial Review that may be filed in the future.

- 20 -

APPENDIX P. 000026

SOAH cause with the Chief Clerk of TDI. The Order of Revocation included procedural information from the SOAH record. So obviously the Defendants relied upon parts of the SOAH record to prepare the Order of Revocation. But they relied upon parts of the SOAH record that were not relevant to the basis of the decision to issue the Order of Revocation. Tex. Gov't Code Ann. § 2001.141(e) required them to specifically rely upon, *inter alia*, Hunter's PFF in preparing its Order of Revocation and explicitly required them to include a ruling on each PFF in its Order of Revocation.

74. Gov't Code § 2001.141 et seq. is unconstitutionally vague because it is not written in such a way as to clearly establish that these "minimum standards"[13] are mandatory and that it cannot be nullified by any other Rules, Statutes, or Practices.

75. Hunter asks this Court to formally declare that the Order of Revocation is void for these reasons. The Order of Revocation denied Hunter her right to rulings on her defenses of the Allegations as they were set forth in her PFF

**The Defendants Misinterpreted And Misapplied TIC § 85.001, TIC § 4005.101(b)(4), TIC § 4005.101(b)(5), Texas Business and Commerce Code Title 2 § 17 et seq, And The Texas Constitution. TIC § 85.001 and TIC § 4005.101(b)(5) Are Unconstitutionally Vague.**

76. This section relates to Allegations 1-12.

77. Hunter has never been investigated by the Texas Attorney General and has never been investigated by any Texas law enforcement agency. There are no Texas

---

[13] See Gov't Code § 2001.001

APPENDIX P. 000027

consumer complaints against Hunter[14], and not a single Texas consumer has suffered in any way by Hunter's actions.

78. The Defendants are not state criminal justice agencies. See Texas Attorney General Opinion No. GA-0680. They are not national criminal justice agencies[15]. Therefore, the Defendants have misinterpreted TIC § 85.001 and The Texas Constitution to believe that they can rely upon TIC § 4005.101(b)(5) to charge Hunter with, *inter alia*, "fraud and dishonest" acts in its NOH (Allegation 2) and to rely upon TIC § 4005.101(b)(4) to charge Hunter with "illegal" acts (Allegation 1). It is especially important to understand that the Defendants made no allegations[16] and provided no evidence that accused Hunter of committing such "fraud" and such "dishonest" and "illegal" acts in Texas. The Defendants provided no evidence that accused Hunter of committing such "fraud" and such "dishonest" and "illegal" acts outside of Texas.

79. Texas Business and Commerce Code ("TBCC") Title 2 § 17 et seq. applies to the business of insurance. It does not define the word "fraud" but the word "fraud" appears repeatedly in TBCC. While there may be a legal distinction between "fraud" and "criminal fraud", the penalties for fraud and for criminal fraud include misdemeanor and felony criminal convictions, fines, and exemplary damages. The penalties for "illegal" acts are the same. TIC § 4005.101(b)(5) is unconstitutionally vague because it does not clearly establish how it relates to TBCC. It does not make clear whether the allegation of "fraud" is a civil charge or a criminal charge. In light

---

[14] See Transcript 9/11/12, p 212 lines 20-25

[15] The Texas Constitution gives the Defendants authority to regulate insurance in Texas.

[16] Allegations 1 and 2 sets forth that Hunter is alleged to have committed an illegal act and an act of fraud and/or a dishonest act. Yet, it makes no allegation that such act occurred in Texas.

- 22 -

APPENDIX P. 000028

of TIC § 85.001, which makes reference to the "Penal Code", and in light of TBCC Title 2 § 17 et seq.: TIC § 4005.101(b)(5) facially appears to allege criminal fraud.

80. TIC §§ 4005.101(b)(5) and 4005.101(b)(4) are unconstitutionally vague because the Statutes facially permit the making of a criminal charge against Hunter. Due Process concerns required the Defendants to notify Hunter of the criminal charge(s) against her, notify Hunter of her rights, and notify Hunter of her right to be represented by counsel. The Defendants gave Hunter no such notifications.

81. Given the fact that all Texas attorneys are under obligation to comply with the Disciplinary Rules of Professional Conduct which require attorneys to be honest, third parties reading the NOH could easily believe that Allegations 1 and 2 have merit and that Hunter has been criminally charged with fraudulent and illegal acts in Texas. Given the fact that Hunter is a licensed insurance agent in nearly forty-seven (47) states, Allegations 1 and 2 have given many insurance regulators cause to question Hunter's qualifications as an insurance agent despite the fact that there have been no consumer complaints against Hunter in any state.

82. TIC § 4005.101(b)(5) is unconstitutionally vague because it is unclear whether or not Allegation 2 is a criminal charge. Without knowing whether or not the charge is a criminal charge, Hunter cannot know her rights and cannot know how to defend the charge or if she needs to defend the charge. A civil charge and a criminal charge have different burdens of proof and different standards of proof.

83. TIC §§ 4005.101(b)(5) and 4005.101(b)(4) are unconstitutionally vague because the punishment should be commensurate with the "crime". For example, the Statutes may be grounds to revoke Hunter's License if the charges are criminal and have been investigated by a criminal justice agency, or they may be grounds for a fine or

- 23 -

suspension of Hunter's License if the charges are civil and have not been investigated by a criminal justice agency.

84. TIC §§ 4005.101(b)(5) and 4005.101(b)(4) are also unconstitutionally vague because third parties who have read the NOH have assumed that the "fraud" and "dishonest" and "illegal" acts alleged are criminal charges. Therefore, the Defendants have been able to use these Statutes to cause third parties to believe that Hunter has committed a crime[17]. The Defendants have published the NOH to third parties, the SOAH has published its PFD on the Internet, and Hunter has been required by insurance regulations in about forty-seven (47) states to give other state insurance regulators a copy of it.

85. TIC §§ 4005.101(b)(5) and 4005.101(b)(4) are unconstitutionally vague because the Defendants are not criminal justice agencies[18] but they give third parties the false belief that they are.

86. TIC §§ 4005.101(b)(5) and 4005.101(b)(4) should be re-written to remove words that are used in the Texas Penal Code, such as "fraud" and "illegal". If the Statutes are not amended to remove words that are used in the Texas Penal Code, then they should include words that stipulate that a state or federal criminal justice agency is the exclusive and/or primary investigative agency and that this Statute is being relied upon by the Defendants only after a full investigation has been conducted by a state

---

[17] Although a person is innocent until proven guilty, the common perception is that the attorney making the charge against Hunter, Ellis, is bound by professional standards to be honest while Hunter is not. This is just the perception of the public; not the truth. The common perception is that Ellis has no reason to lie but that Hunter does have reason to lie; that Ellis is being honest and that Hunter is not.

[18] See Texas Attorney General Opinion No. GA-0680.

- 24 -

APPENDIX P. 000030

or federal criminal justice agency and only after the respondent has been formally charged by the state or federal criminal justice agency.

87. The Defendants have misinterpreted and misapplied TIC § 85.001, TIC §§ 4005.101(b)(5) and 4005.101(b)(4), and the Texas Constitution to erroneously believe that they have national, exclusive, primary, personal and subject matter jurisdiction over their own unconstitutional criminal allegations against Hunter which rise to the level of malicious prosecution. (Ellis filed a Motion to Dismiss after sixteen (16) months of adjudication and only after Hunter filed a complaint against her with the State Bar of Texas. There will be more discussion on this later.)

88. The Defendants have misinterpreted and misapplied TIC § 85.001, TIC §§ 4005.101(b)(5) and 4005.101(b)(4), and the Texas Constitution to erroneously believe that they have authority to use an NOH filed with the SOAH as a exclusive and primary venue to prosecute such criminal allegations.

89. The Defendants have misinterpreted and misapplied TIC § 85.001, TIC §§ 4005.101(b)(5) and 4005.101(b)(4), and the Texas Constitution to erroneously believe that they have authority to criminalize civil disputes that occur outside of Texas on behalf of commercial entities that do not and never have resided in Texas. (Allegations 1-12).

90. TIC § 85.001 is unconstitutionally vague because It is not written in such a way as to clearly establish that the Defendants' are not criminal justice agencies and that this Statute only applies in the event that a criminal justice agency has conducted a full investigation. If the criminal justice agency finds violations that it does not want to prosecute, then the Defendants can rely upon TIC § 85.001.

- 25 -

APPENDIX P. 000031

91. Hunter asks that this Court declare that the Defendants misinterpreted and misapplied TIC § 85.001, TIC §§ 4005.101(b)(5) and 4005.101(b)(4), TBCC Title 2 § 17 et seq, and The Texas Constitution, that TIC § 85.001, TIC §§ 4005.101(b)(5) and 4005.101(b)(4) are unconstitutionally vague, and that the Order of Revocation is void as to Allegations 1 and 2.

92. Hunter asks that this Court declare that the Defendants misinterpreted and misapplied TIC § 85.001, TIC §§ 4005.101(b)(5) and 4005.101(b)(4), and the Texas Constitution to erroneously believe that they have national authority over civil disputes that occur outside of Texas and that the Order of Revocation is void as to Allegations 1-12.[19]

**The Defendants Misinterpreted Texas Business and Commerce Code Title 2 § 17.565 and TIC § 81.001. These Same Rules And Statutes Are Unconstitutionally Vague And Unconstitutionally Vague As Applied To Hunter.**

93. The NOH set forth, *inter alia*, that TDI had received October 2009 Complaint against Hunter from LKAI. Allegations 3-12 were the subject of the October 2009 Complaint.

94. LKAI was not licensed by TDI to transact insurance in Texas in 2009. LKAI obtained a license from TDI for the first time in late 2011, but that license is not a surplus lines insurance license. LKAI transacts surplus lines insurance business in Texas. The Defendants know this to be a fact and have explicitly authorized such insurance transactions in Texas despite the fact that Texas Insurance Code ("TIC") explicitly prohibits such activity.

---

[19] While Allegations 3-12 are not related to TIC §§ 4005.101(b)(5) and 4005.101(b)(4), they are related to the Texas Constitution because the NOH and discovery responses received by Hunter in the underlying SOAH cause show that the Defendants used Allegations 3-12 to intervene in a Florida state civil court case.

- 26 -

APPENDIX P. 000032

95. The Defendants have used the NOH directed at Hunter to punish her and harass her for daring to sell insurance at a cheaper rate than LKAI. The Defendants don't want the residents of the United States to know this fact, and they want to impede interstate competition in favor of LKAI.[20] Hunter offers liability insurance to people who own dogs that costs about 3-20 times less than that offered by LKAI.

96. Allegations 3-12 are time-barred: TBCC Title 2 § 17.565 sets forth a 2-year limitation in which to pursue an action that falls within the scope of Allegations 3-12. Also, there is a two-year statute of limitation under § 81.001 of Texas Insurance Code ("TIC"). December 2011 is more than two years after October 2009.

97. The Defendants misinterpreted and misapplied TIC § 81.001 (b)(2) et seq. During the hearing on September 13, 2012, Hunter learned for the first time that the Defendants believed that they could file the NOH on December 6, 2011, based on the October 2009 Complaint because they believed on December 6, 2011, that they would determine in August 2012 that Hunter's alleged advertising violations were ongoing.

98. No documents filed by TDI in the SOAH made an assertion of "ongoing" conduct or violations.

99. The Defendants conducted an insurance advertising review directed at Hunter in October 2009 in response to the October 2009 Complaint and did not conduct another advertising review until August 2012. The NOH was filed on December 6, 2011. Therefore, the parts of the NOH that contain Allegations 3-12 were time-barred at the time the NOH was filed. The NOH filed in December 2011 could not have been based on the "ongoing" conduct allegedly discovered by the Defendants

---

[20] The record in SOAH 454-12.316.c established these facts.

APPENDIX P. 000033

in August 2012 because August 2012 is a date that is nearly nine (9) months after the NOH was filed. It is contrary to Due Process principles for the Defendants to seek to discipline Hunter for a future, unknown act.

100. Further, there are no allegations and there is no evidence that the advertising violations alleged (Allegations 3-12) occurred in Texas. (This is discussed more later.)

101. The Defendants misinterpreted TIC § 81.001(c) to erroneously believe that it gave them absolute jurisdiction over words seen on an Internet webpage at all times and that, for example, words directed to Californians are subject to their authority only on the basis that a Texan might also see them. (This is discussed more later.)

102. TIC § 81.001 et seq. is unconstitutionally vague. This Statute is not written in such a way as to clearly establish that the Defendants cannot take such actions as those described in this Statute only because they believe that they might be able to make a future claim that the conduct is ongoing and/or a future claim that the conduct is ongoing outside of Texas. Due Process concerns required that the alleged "ongoing" conduct must be ongoing at the time the state agency initiates proceedings.

103. TIC § 81.001 et seq. is unconstitutionally vague and unconstitutionally vague as applied to Hunter because it does not stipulate a time-frame in which the Defendants are required to take action to stop the alleged violations of law. The Defendants revoked Hunter's License in May 2013. The revocation was based only on the October 2009 Complaint. There was no complaint filed against Hunter since October 2009. No Texas consumer has ever filed a complaint against Hunter. The alleged "ongoing" conduct alleged in the October 2009 Complaint cannot be classified as

- 28 -

"ongoing" under TIC § 81.001(c) because no complaints had been filed against Hunter since October 2009 and because the Defendants knew about the alleged "ongoing" conduct since October 2009 and took no steps to stop it. It is contrary to Due Process concerns for the Defendants to knowingly allow the alleged conduct to continue and to subsequently seek to discipline Hunter by asserting that this alleged conduct was "ongoing" and falls within the scope of TIC § 81.001(c).[21]

104.    TIC § 81.001 et seq is unconstitutionally vague and unconstitutionally vague as applied to Hunter because Hunter believed and believes that the NOH was filed against her after the statute of limitations had expired only because the Defendants wanted to harass her and to force her to cease competing with LKAI.[22] Hunter filed three (3) or more motions for summary disposition in the SOAH cause 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.c. The Defendants did not respond to the first two (2) and their response to the third one stated only that Hunter's motion for summary disposition was an abuse of process and they should not be required to respond. The ALJ denied all of Hunter's motions for summary disposition. Hunter asserted this affirmative defense that the SOAH cause was time-barred as to Allegations 3-12 in her timely Answer and in each motion for summary disposition. Hunter had no way to know that the Defendants interpreted TIC § 81.001 et seq. as described herein until September 11, 2012, during a hearing on the merits in the SOAH cause. Therefore, Hunter was

---

[21] This paragraph is not an admission that Hunter violated any Texas laws or admits to any "ongoing" conduct. This paragraph is written from the perspective of the erroneous interpretation of this Statute by the Defendants.

[22] The NOH and discovery received from the Defendants in the underlying SOAH cause prove that the Defendants were using the NOH to attack Hunter without any basis in law or fact in an effort to impede interstate competition in favor of LKAI.

- 29 -

APPENDIX P. 000035

prohibited from preparing a defense of the erroneous interpretation. Had Hunter known that the Defendants relied upon such an erroneous interpretation of TIC § 81.001 et seq, Hunter would have filed this petition in early 2012.

105. TIC § 81.001 et seq is unconstitutionally vague and unconstitutionally vague as applied to Hunter because it does not stipulate that the Defendants are required to take steps to stop the alleged objectionable conduct as part of the process of taking disciplinary action and/or as part of the process of resolving an issue before disciplinary action is initiated. For example, the Defendants had authority under TIC § 85.001 et seq. to charge Hunter with a misdemeanor and to fine her $500-$1000 for violations of the insurance law, but the Defendants have not done so. As another example, TIC § 83.051 permits the Defendants to issue an emergency cease and desist order if they believe, *inter alia*, that a person is committing an "unfair act". "Unfair act" is defined under TIC § 83.001. This definition of "unfair act" is unconstitutionally vague because it uses the word "unfair" to establish its definition as follows:

> " 'Unfair act' " means an unfair method of competition, an unfair or deceptive act or practice, or an unfair claim settlement practice as defined under Chapter 541 or 542 or a rule adopted under either chapter."

106. The NOH repeatedly relies upon the October 2009 Complaint to allege that Hunter acted in "unfair" ways against LKAI. Because the Defendants have never pursued remedies permitted by TBCC § 17.48(b), TIC § 85.001 et seq, and TIC § 83.051 to punish and terminate Hunter's "unfair ways", the Defendants waived all authority to take disciplinary action against Hunter on December 6, 2011, when it filed its NOH, and on May 8, 2013, when it issued its Order of Revocation. Waiver is

- 30 -

the intentional or voluntary relinquishment of a known right, claim, or privilege.[23] Estoppel bars the Defendants from alleging that the SOAH cause is not time-barred because of their previous conduct.[24] The effect is that the Defendants were prevented by their own acts from claiming a right to discipline Hunter who was entitled to rely on the fact that the Defendants took no action against Hunter for more than two (2) years.[25] Therefore, The Defendants misinterpreted TIC § 81.001 et seq. to believe that they could circumvent its limitations and their waiver and initiate state agency proceedings on December 6, 2011, and TIC § 81.001 is unconstitutionally vague as applied to Hunter.

107. The Defendants made the allegation of "ongoing conduct" for the first time at the hearing on the merits on September 13, 2012. The statute of limitations can not be retroactively applied without misinterpreting TIC § 81.001 et seq.

108. The NOH is grossly contrary to law and is not based in fact. Hunter had every reason to believe that the NOH was nothing more than a weapon unlawfully wielded

---

[23] 28 Am.Jur.2d, "Estoppel and Waiver", Section 154. Black's Law Dictionary (6th Ed.) defines waiver as follows: "The intentional or voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, or when one dispenses with the performance of something he is entitled to exact or when one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something the doing of which or the failure or forbearance to do which is inconsistent with the right, or his intention to rely upon it..."

[24] Black's Law Dictionary (6th Ed.).

[25] Hunter does not admit "ongoing conduct". In fact, the Defendants never alleged and did not provide proof that the alleged conduct, regardless of whether or not it is classified as "ongoing", occurred in Texas.

- 31 -

against her so that the Defendants could intervene in a Florida state civil court case. Hunter had no reason to believe that she had actually violated any Rules or Statutes.

109.    Hunter asks this Court declare that Allegations 3-12 are time-barred because the Defendants misinterpreted and misapplied TIC § 81.001 and because this Statute is unconstitutionally vague and unconstitutionally vague as applied to Hunter.

**The Defendants Misinterpreted, Misapplied, and Violated Rules And Statutes Related To Advertising.**

110.    Hunter asks that this Court declare that the Defendants misinterpreted and misapplied the Rules and Statutes related to Allegations 3-12 for the reasons set forth herein and that the Order of Revocation is void.

111.    Allegations 3 and 5-12 are contemplated by 28 TAC Chapter 21. The SOAH was not proper the venue for enforcement of 28 TAC Chapter 21. The TAC only defines and sets standards. See 28 TAC § 21.1. Enforcement of these standards is set forth in 28 TAC Rule 21.1 which states that enforcement is under TIC § 541 et seq.

112.    TIC § 541.004 states that any enforcement under this section **must** be brought in district court in Travis County.  Further, TIC § 541.102 states that the department **shall** issue and serve on the alleged violator 1) a statement of the charges; and 2) a notice of the hearing on the charges. This hearing is an informal hearing in that it does not require strict pleading.

113.    The Defendants did not follow the requirements set forth in TIC § 541 et seq.

114.    TIC § 36.003 sets forth that the Defendants may not adopt rules restricting advertising except to prohibit false, misleading, or deceptive practices. Therefore, any Allegations regarding advertising must establish that the advertising is "false", "misleading", and/or "deceptive" and no Rule found in 28 TAC Chapter 21 is valid

- 32 -

APPENDIX P.  000038

unless it is prohibits <u>only</u> false, misleading, or deceptive practices. The Defendants misinterpreted and misapplied the Rules found in 28 TAC Chapter 21. The Defendants misinterpreted and misapplied TIC § 36.003. Specifically, the Defendants did no rely upon the common definitions of "false", "misleading" and "deceptive". Rather, they relied upon Luu and Evins' personal beliefs of the definitions of these three words. The Defendants misinterpreted the Rules and Statutes by, *inter alia*, allowing the legal and common meanings of these words to be established only by Luu and Evins' personal beliefs. In addition, the Defendants' Allegations set out to restrict words that were not "advertising" words, words that are protected by the First Amendment, words not directed at Texans, and words not made available to Texans. As such, the Defendants misinterpreted and misapplied 28 TAC Chapter 21.

115. TIC § 36.003 and 28 TAC Chapter 21 are unconstitutionally vague because they do not define "false", "misleading" or "deceptive".

116. If Hunter had known that the Defendants' definitions of these three words existed solely in the opinions of Luu and Evins, Hunter would have filed this petition in early 2012. Hunter cannot be expected comply with a Rule or Statute when the definitions of the words of said Rule or Statute are established only by some unknown person's opinion.

117. Both Luu and Evins testified in the SOAH that they did not navigate the Internet website that was the subject of this advertising review as if they were Texas consumers. The Defendants singled out the webpages in question. Luu's advertising review file does not show that Luu printed webpages in the order in which she visited the webpages. They show that Luu singled out specific pages of the website for her

- 33 -

review without regard to whether or not the pages were directed at Texans and/or available to Texans. Both Luu and Evins testified that they did not know if the website in question had or has a drop-down menu by which a website visitor could indicate that he is a Texas consumer and be directed to webpages designed for use by Texans. Therefore, not a single Allegation regarding advertising (Allegations 3-12) established a connection to Texas. The Defendants' jurisdiction is confined to Texas pursuant the Texas Constitution and the United States Constitution.

118. Therefore, the Defendants misinterpreted 28 TAC Chapter 21 to believe that it gave them jurisdiction over the Internet.

119. Luu and Evins do not understand, *inter alia*, the meaning of the Rules set forth herein, the definition of "advertising", the interpretation and application of Rules regarding the use of statistics, the definitions of "misleading" and "disparage", their jurisdictional boundaries, what constitutes commercial speech, and what constitutes speech that is protected by the United States Constitution.

120. Hunter could not have been expected to comply with the Rules set forth in 28 TAC Chapter 21. The first time the Defendants revealed that they were relying upon Luu's misapplications and misinterpretations of the Rules and not on the actual meanings of the Rules was the first day of the SOAH hearing, September 11th 2012, when Luu testified. If Hunter had known that the Defendants were relying only upon Luu's errors to support the NOH, Hunter would have filed this petition in early 2012.

121. 28 TAC Chapter 21 is unconstitutionally vague because it is not worded in such a way as to stipulate that the United States Constitution, the Texas Constitution, the laws of the United States, and the laws of Texas are superior and that a Rule is automatically invalid when it is contrary to the established constitutions and laws.

- 34 -

APPENDIX P. 000040

122.  28 TAC Chapter 21 is unconstitutionally vague because it is not worded in such a way as to stipulate that the definitions of common words are in the sole discretion of the Commissioner, or more specifically, in the sole discretion of Brenda Luu, an employee of TDI.  If Hunter had known that the Defendants thought that they had discretion to design their own definitions, Hunter would have filed this petition in early 2012.

123.  The record in the underlying SOAH cause shows that Luu does not understand the definition of "advertising" despite the fact that the Rules set forth the definition of "advertising". See Transcript 9/11/12, p 199 lines 13-21, Transcript 9/11/12, p 200 lines 10-16, Transcript 9/11/12, p 201 lines 2-16, Transcript 9/11/12, p 201 line 25 and p 202 lines 1-16, Transcript 9/11/12, p 203 lines 4-23, and Transcript 9/11/12, p 219 lines 10-14.

124.  On the issue of jurisdiction, Luu's lack of knowledge and confusion on this issue was revealed in the transcript of her testimony. See Transcript 9/11/12; p 180 lines 5-8, Transcript 9/11/12; p 180 lines 12-20, Transcript 9/11/12; p 181 lines 17-19, Transcript 9/11/12; p 182 lines 3-9, Transcript 9/11/12; p 185 lines 11-23, Transcript 9/11/12 p 231 lines 23-25; p 232-234, p 235 lines 1-2, Transcript 9/11/12 p 235 lines 11-25

125.  Luu's testimony admitted on page 180 lines 12-20 of the Transcript of 9/11/12 that there is no policy that grants her authority to control the Internet. Yet, her testimony proved that she fails to understand that she does not have jurisdiction or authority over all the content of all Internet websites. The Defendants relied upon Luu's misunderstanding of jurisdiction to draft and adjudicate the NOH.

- 35 -

126. The Defendants are responsible for the regulation of insurance only in Texas. The mere existence of a non-resident insurance agent's website does not invoke the Defendants' jurisdiction over that website or over every word on that website.

127. According to Luu's misinterpretation, she believes that she has jurisdiction and authority to block a person who is located in Texas from viewing a website to engage in commerce to satisfy his non-Texas consumer needs. For example, according to Luu, a person visiting Texas but who lives in Alabama should be blocked from conducting a consumer transaction via an Internet website only because he is physically located in Texas at the time and the Alabama service provider is not licensed in Texas. According to Luu, an Alabama resident insurance agent who is not licensed in Texas must block his website from being viewed by anyone located in Texas.

128. Also, according to Luu, if a person lives in Texas but is planning to move to Georgia, the Georgia insurance providers who are not licensed in Texas must block that Texan's access to the Georgia insurance provider only because he is located in Texas.

129. And after Luu's lengthy testimony about requiring non-resident insurance agents to place disclosures on their websites to protect Texas consumers from assuming that an insurance product is available in Texas and after Luu testified regarding her deep concern for this issue, she testified that she has never directed a non-resident insurance agent to put such a disclosure on his website[26]:

Transcript 9/11/12 p 235 lines 11-25

---

[26] Luu testified that she has been employed at TDI for 14 years in the same job position.

- 36 -

Q. So what you're saying is that if a Texas consumer can view any website from a Massachusetts insurance agent, a New York insurance agent, that that's a violation of insurance regulation?

A. I don't know because I haven't had any case like that yet.

Q. So it's not really an issue because you've never actually told out-of-state agents to put a disclosure on their websites; is that what you're saying?

A. Yes

130. Luu's testimony in the SOAH cause lacked candor. She repeatedly and substantially changed her answers to the same questions on cross examination. Luu's interpretation of many Statutes and Rules changed several times during her testimony which established that the Defendants' interpretations were subject only to Luu's fast-and-loose whims.

131. Luu's testimony revealed that she does not understand the relevant Rules and Statutes.

132. Luu testified that she did not conduct an investigation to seek facts in support of the Allegations[27]. And her supervisor, Evins testified that he has no obligation to seek the facts. Therefore, the Defendants relied only upon Luu's beliefs to support the Allegations 3-12 shown in the NOH.

133. The Defendants misinterpreted 28 TAC Chapter 21 to erroneously believe that allegations of violations of this Chapter 21 do not require an investigation into the facts of the matter. 28 TAC Chapter 21 is unconstitutionally vague because it is not worded in such a way as to stipulate that facts are a required to establish violations of this Chapter. The Defendants relied only upon Luu's opinions.

---

[27] Luu and Evins testified only to Allegations 3-12.

- 37 -

APPENDIX P. 000043

134. The Defendants misinterpreted 28 TAC Chapter 21 because they failed to give deference to superior laws. The Defendants made no attempt to plead or establish that Hunter violated TBCC Title 2 § 17.12 which establishes that deceptive advertising occurs when a person "knows [such advertising] materially misrepresents..." The Defendants made no attempt to plead or demonstrate that Hunter violated TBCC Title 2 § 17.45(9) which defines "knowingly" as "actual knowledge". It defines "intentionally" as "actual awareness" in § 17.45(13). TIC § 541.002 defines "knowingly" the same way.

135. It is not possible that Hunter knew that she violated any Rules or Statutes set forth in the NOH because the Defendants misinterpreted and misapplied 28 TAC Chapter 21 by erroneously asserting that the only requirement to allege violations was Luu's perceived knowledge and not Hunter's actual, intentional actions and/or awareness.

136. The Defendants made no attempt to show that Hunter had actual knowledge of violations. The Defendants had nothing more than the actual knowledge that Luu did not understand the Rules, the Statutes, the United States and Texas Constitutions, and the laws of the United States and Texas[28].

137. 28 TAC Chapter 21 is unconstitutionally vague because it is not worded in such a way as to provide the definitions of words that the Defendants must rely upon to

---

[28] The Commissioner is a lawyer and TDI was represented by a lawyer in the SOAH cause. They knew Luu was misinterpreting and misapplying the Rules and Statutes. In fact, in the SOAH cause, Ellis directed Luu to testify regarding Allegation 4 from Luu's notes regarding the Statute and not from the Statute. In fact, Ellis manipulated the hearing exhibits to remove the one page of the relevant Statute that proved that Luu had completely misinterpreted and misapplied it.

APPENDIX P. 000044

analyze allegations of violations of 28 TAC Chapter 21. It does not stipulate that the definitions relied upon can be found in TIC § 541 et seq, in the TBCC, and in other relevant state and federal constitutions, statutes and laws. But TIC is also unconstitutionally vague regarding definitions because TIC § 541 et seq., which is Title 5 of TIC and is titled Protection of Consumer Interests, contains only two (2) definitions. One is "knowingly" and the other is "person". TIC §§ 541.051(1)(A) and 541.051(1)(B) can be related to Allegations 3-12. And they define "misrepresentation regarding policy or insurer" as an "unfair act" or a "deceptive act". And the "unfair act" and "deceptive acts" are further defined as "misrepresentation". There can be no meaningful understanding derived from such a circular definition. Therefore, it is not possible for Hunter to comply with 28 TAC Chapter 21.

138. The Defendants misapplied the Rules and Statutes because they failed to frame the Rules and Statutes within the boundaries of the higher laws, including but not limited to, the Sherman Anti-Trust Act, the Clayton Act, or the Texas Free Enterprise and Antitrust Act of 1983 when they drafted and adjudicated the NOH.

139. Allegations 3-12 are largely based on the Defendants' unlawful and unconstitutional use of the NOH to intervene in an ongoing Florida state civil court case between Hunter, a resident of Virginia, and LKAI.[29] There are no facts, no rules, and no laws that connect the Defendants to this Florida state civil court case or that permit the Defendants' use of an NOH to intervene in this Florida state civil court case. In fact, the NOH and the discovery responses received from the Defendants in the SOAH cause establish that the Defendants are seeking to use their authority to enforce a Florida state civil court order and that the Defendants have used their

---

[29] Orange County Florida Civil Court case 2009-CA-037513

APPENDIX P. 000045

authority outside of Texas to seek to "take down" entire websites from the Internet, without regard for whether or not said websites and/or website pages were available for viewing by Texans, for the sole purpose of supporting the desires of the plaintiffs in the Florida state civil court case, Mitchel Kalmanson, the president of LKAI, and LKAI, to impede interstate competition. The Defendants misinterpreted 28 TAC Chapter 21 by erroneously believing that they could rely upon 28 TAC Chapter 21 to enforce a Florida state civil court order.

140. The Defendants misinterpreted and misapplied 28 TAC Chapter 21 by using it to act contrary to TIC § 981.001(b)(6). TIC § 981.001(b)(6) sets forth that its purpose is to protect "authorized" insurers, like Hunter who causes the issuance of policies issued by "authorized" insurers, from unfair competition of "unauthorized" insurers. "Surplus lines" insurers are "unauthorized" insurers. And LKAI and the Illinois Company are "unauthorized" insurers.

141. Therefore, the Defendants, by statute are required to protect Hunter from LKAI and from the Illinois Company because Hunter does not have a surplus lines license and offers only "authorized" insurance while the LKAI and the Illinois Company offer only "unauthorized" insurance.

142. In fact, TIC § 981.004 et seq. specifically restricts the sale of "unauthorized" insurance to situations in which "authorized" insurance is not available. TIC § 981.004 is as follows:

(a) An eligible surplus lines insurer may provide surplus lines insurance only if:

(1) the full amount of required insurance cannot be obtained, after a diligent effort, from an insurer authorized to write and actually writing that kind and class of insurance in this state;

- 40 -

APPENDIX P. 000046

(b) An eligible surplus lines insurer may provide surplus lines insurance only in the amount that exceeds the amount of insurance obtainable from authorized insurers.

143. For reasons not fully yet understood, the Defendants have abused their authority to act contrary to the protection of consumers in Texas and outside of Texas and to seek to monopolize an insurance market to attempt to limit choices for people who own dogs, who want to buy liability insurance, to buying only from "unauthorized" insurers whose policies are characterized as being highly unlikely to cover a claim, having very high deductibles, and being very expensive.

144. The Defendants' witness, Evins, testified that he did not know that the SOAH cause was based on complaints made by a Florida company and a Utah company.[30] Yet, Evins' notarized signature appears on the Defendants' response to Hunter's request for interrogatories in the underlying SOAH cause. These interrogatory responses provide about seventeen (17) pages of information regarding the Florida and Utah company complaints. Evins did not have a full understanding of the issues and cannot have an understanding of the Rules and Statutes relied upon to draft the NOH. Evins could not have properly interpreted and applied Rules and Statutes to the issues. Therefore 28 TAC Chapter 21 is also unconstitutionally vague because it does not stipulate that the Defendants must have "actual knowledge" of the facts, Rules and Statutes. If Hunter had known that the Defendants erroneously believed that they could make allegations without facts and revoke Hunter's License based only on those allegations, she would have filed this petition in early 2012.

**Allegation 3. (Allegations 1 and 2 will be discussed last.)**

---

[30] The Utah Company is the Illinois Company referenced herein. The home office of the Illinois Company is in Utah.

- 41 -

APPENDIX P. 000047

145. Allegation 3 is based on an allegation of disparagement. The Defendants' witnesses who testified at the SOAH hearings to establish the elements of "disparagement" were Luu and Evins. Both testified that they are employees of TDI. Both testified that they did no research into the truth of the statements they classified as disparaging. Evins testified that he has no obligation to determine whether or not a statement he classifies as disparaging is untrue. The Defendants failed to rely upon the legal definition of "disparagement". The Defendants did not attempt to show that such "disparagement" occurred in Texas. The Defendants did not frame Allegation 3 within the boundaries of the First Amendment. The Defendants misinterpreted and misapplied the definition of "disparagement" in Allegation 3.

146. Luu testified that the only statements she found disparaging were allegedly made against LKAI and are as follows [re: Allegation 3 regarding disparagement]:

"There is several statements on this page that does not comply with this rule [28 Tex Admin. Code Ann ("TAC") § 21.110(a)]. For example, it say For less than Lester Kalmanson Insurance, Inc. And she compare, Ms. Hunter compare that Kalmanson has to pay $15 for mail versus she can do over the phone. And Mr. Kalmanson required to pay full amount of premium up front, instead of she accept 20 percent down." See Transcript of 9/11/12 hearing, p 150, lines 15-22

147. Luu does not have a good command of the spoken English language. To restate Luu's testimony using proper grammar:

RESTATED USING PROPER GRAMMAR: "There are several statements on this page that do not comply with this rule [28 Tex Admin. Code Ann ("TAC") § 21.110(a)]. For example, there is a statement that says, "For less than Lester Kalmanson Insurance, Inc." And Ms. Hunter made a comparison that the insurance applicant is required to mail his application to Kalmanson while Hunter can accept an application over the telephone. Ms. Hunter made a comparison

- 42 -

that Mr. Kalmanson requires insurance applicants to pay the full amount of premium up front while Ms. Hunter can issue an insurance policy with only a 20-percent downpayment."

**Allegation 4.**

148. Allegation 4 is based on an allegation of violating TIC § 981.001(b)(6) which Luu misinterpreted to erroneously believe that it prohibits the publication of a surplus lines carrier's name.

149. Luu testified regarding Allegation 4 as follows:

See Transcript of September 11, 2012, p 147 lines 23-25 and p 148 line 1

Luu: "[Texas Insurance Code 981.001(b)(6)] says the advertisement may not solicit insurance business under the surplus lines carrier's name, cannot disclose the name of the surplus lines carrier, shown as Lloyd's of London."

See Transcript 9/11/12, p 148 lines 2-25 and p 149 line 1

MS. ELLIS: "And I would like to point out to the Court that these statutes have been provided in Tab K."

Question. (BY MS. ELLIS) "And why can you not advertise in a surplus line carrier's name?"

Luu: "We try to prevent unfair competition by unauthorized insurer."

Question: "Okay. Now, if you would, please turn to Bates Page TDI 282, and will you explain any violations of Section 981.001(b)(6) on this page?"

Luu: "It disclosed the name of Lloyd's of London on this page."

MS. HUNTER: "I'm sorry, what did she say?"

THE WITNESS: "I say the first bullet, which disclosed the name of Lloyd's of London, which is the surplus lines. So it's a violation of this statute."

Question. (BY MS. ELLIS) "And is Lloyd's of London a surplus lines carrier?"

Luu: "Yes."

Question. "And why is this an example of a violation of Section 981.001(b)(6)?"

- 43 -

Luu: "Because this statute is not allowed to disclose the name of the surplus lines carrier."

150. The truth is that TIC 981.001(b)(6) makes no reference to advertising and does not prohibit the disclosure of a surplus lines carrier's name.

**Allegation 5.**

151. Allegation 5 is based on an allegation of unfair or incomplete comparison. Luu testified at the SOAH hearings to establish the elements of "unfair or incomplete comparison".

152. Luu testified regarding Allegation 5 regarding unfair or incomplete comparison as follows:

"Yes. There are a couple but, for example, the premium mentioned, 946.84, and she mentioned the premium $2,700, did not provide a complete comparison side-by-side between her policy versus the Kalmanson policy in details. So it's a violation of the rule [28 TAC § 21.111(a)]." See Transcript 9/11/12, p 153 lines 1-6

153. However, Luu misinterpreted 28 TAC § 21.111(a) because it does not require a "complete comparison", does not require a "side-by-side" comparison, and does not require "policy in details".

**Allegation 6.**

154. Allegation 6 is based on an allegation of not being truthful or being misleading. Allegation 12 is based on an allegation of improper use of statistics. Luu testified at the SOAH hearings regarding Allegations 6 and 12 as follows:

Transcript 9/11/12, p 154 lines 12-23

Luu: "The overall, it provides misleading information, doesn't have enough source. For example, she say Our rates are up to 50 percent less than our competition. So you need to provide a source to support that statement, so --

- 44 -

APPENDIX P. 000050

which is a violation of the rules [28 TAC §§ 21.103(a) and 21.108(b)]. "

Question posed to Luu (BY MS ELLIS). "And how can this content or this advertisement be misleading to a consumer?"

Luu's Answer: "They need to know the true - you know, the fact comparison. So it's not, like, 50 percent of - it's 50 percent less; it's not - that's not providing all the support that they need to know."

155. Luu misinterpreted and misapplied 28 TAC §§ 21.103(a) and 21.108(b) because her testimony regarding Allegation 5 indicated a real-life example of a premium charged by Lester Kalmanson Agency, Inc. ("LKAI") of $2700 and a premium charged by a different agent of $946.84. Therefore, Luu's testimony established that support for such a statement shown in paragraph 154 above existed. Also, there is no Rule or Statute that defines standards for "support" of such a statement. The Defendants did not allege that this statement was not true or that it was directed at Texans or made available to Texans.

156. Allegation 6 was unconstitutionally vague as applied to Hunter and unequally applied to Hunter. TDI operates a website located at www.HelpInsure.com that includes internet advertising published by insurance agents. Many of the ads located at www.HelpInsure.com in July 2012 contained similar statements regarding cost comparisons and statistics. And the Defendants approved the use of such advertising on its website www.HelpInsure.com.

157. To summarize, if Luu's misinterpretations are applied, the violations of 28 TAC §§ 21.103(a) and 21.108(b) found on www.HelpInsure.com included:

1) making a free offer without proper disclosure [champions insurance agency at ciatx.com],

2) use of statistics without proper citation,

- 45 -

3) false advertising such as "best prices" [cisnerosinsurance.net], "affordable" insurance, "lowest" prices, "best service" [cisnerosinsurance.net],

4) failing to fully state the name of the insurance company through which coverage is offered,

5) failure to register the domain name with TDI as a fictitious name,

6) failing to include information regarding optional riders,

7) false advertising [up to 35% off on car insurance: ezinsuranceagency.com],

8) false advertising ["in addition to protecting your vehicle, Pronto insurance can now protect your #1 investment, your home"],

9) false advertising ["the best insurance products": starr agency at mystarr.com], and

10) false advertising ["protect your corporation or your family": Watkins insurance group].

158. Luu misinterpreted the meaning of "misleading" and misapplied her misinterpreted meaning. Texas law has established that an act is misleading if a party knowingly makes a false statement, a second party relies upon that false statement, and the second party is subsequently injured. Luu's confusion on this issue is revealed, in part, as follows:

Transcript 9/11/12, p 204 lines 11-25 and p 205 lines 1-3

Q. (BY MS. HUNTER) How is the consumer injured by your statement earlier that sample policies have been removed; how is a consumer injured by that?
A. It's just a misleading statement because you're saying the sample has been removed and it is still there.

- 46 -

APPENDIX P. 000052

Q. Okay. Is it possible you're confused about one document on another page that's not a sample policy?

A. Which page are you referring to?

Q. TDI Page 128 through 131, you said something about —— and I cannot see the exhibit, I just took notes from what you said —— you said that it was misleading that sample policies have been removed, but a sample policy was (inaudible) part of the website and so, therefore, this statement is misleading?

A. Yes.

159. But the fact is that Luu did not establish that this information was directed at a Texan or made available to Texans. Further, it is counterintuitive to define this circumstance as "misleading". The fundamental questions to establish whether or not something is "misleading" are: 1) is the statement false? 2) is the false statement made knowingly? and 3) does a third party rely upon that false statement to his detriment? If a third party cannot possibly be injured, the Defendants cannot establish that something is "misleading". For example, if there is a broken hyperlink on a webpage, according to Luu's misinterpretation, that broken hyperlink is "misleading" only because the website visitor could not read something he expected he would be able to read. Also, it is not possible for Luu to classify something she doesn't understand as misleading. In order to make the allegation that something is misleading, Luu must first understand it. But the fact is that Luu does not know what a "sample policy" is. Luu claimed that four pages, TDI pages 128-131, constituted a "sample policy". However, I, Chase Carmen Hunter, state under penalty of perjury, that the truth is that the typical insurance policy is at about 30 pages in length. In the twenty (20) years that I have been a licensed insurance agent, I have never seen a "sample policy" that was only four (4) pages in length. Luu confused "declaration pages" with a "sample policy". _CCHH_          _5/25/13_

- 47 -

**Allegation 7.**

160. Allegation 7 is based on an allegation of omitting information. Luu did not testify at the SOAH hearings to explicitly establish the elements that violated 28 TAC § 21.112. But it is believed that Luu testified regarding Allegation 7 as follows:

Transcript 9/11/12 p 163 lines 23-25 and p 164 lines 1-7.

Question (BY MS. ELLIS): How are these sample policies misleading or untruthful?"
Luu's Answer: "It's incomplete comparison. For example, if you're looking at Page 141, the liability there on Ms. Hunter's web page, the dec page, it state Liability SIR 5,000, and she compare it to Kalmanson which has 100,000. So it's not the same policy, it's not the same coverage, it's not the same benefits, and it didn't have the complete exclusion page, it does not have all pages."

161. This testimony in the paragraph immediately above proves that Luu misinterpreted the facts. She therefore misinterpreted 28 TAC § 21.112. Luu does not know the meaning of "Liability SIR 5,000" and did not have the fundamental basic knowledge needed to review this issue. I, Chase Carmen Hunter, state under penalty of perjury, that in the twenty (20) years that I have been a licensed insurance agent, I have learned that "Liability SIR $5,000" means that there is a $5,000 "self-insured retention" (which acts like a deductible). Texas law confirms the precise meaning of "self-insured retention". Meanwhile, the "100,000" that Luu referred to is a liability limit, not a "liability SIR". The "liability limit" is the total amount the insurance provider is willing to pay in the event of a claim. *CCHut*

*5/25/13*

- 48 -

162. This testimony shown immediately below establishes, *inter alia*, that Luu misinterpreted the meaning of "advertising", the meaning of "misleading", and that she is misapplied her misunderstandings to erroneously believe that she was not required to frame her conclusions within the boundaries of the First Amendment.

Transcript 9/11/12 p 164 lines 11-23

Luu: "This page is provide misleading information. Ms. Hunter is stating that the Department favors Kalmanson policy, which is misleading because TDI does not favor any policy. And the other statement is -- she's saying The Texas Department of Insurance has threatened to terminate our Texas license due to this advertising when there is absolutely no basis to do so. And we review her website based on several objections. So we have objections that her web pages does not comply with our rules and statute."
Question (BY MS. ELLIS): "Okay. So would you -- "
Luu: "So, therefore, it's misleading."

## Allegation 8.

163. Allegation 8 is based on an allegation of not disclosing the full licensed name of the insurer. Luu testified at the SOAH hearings regarding Allegation 8 as follows:

Transcript 9/11/12, p 155 lines 6-25 and p 156 lines 1-7.

Luu: "It [28 TAC § 21.104(a)(1)] say, 'The full licensed name of the insurer is required to be stated in each of its invitation to inquire and invitation to contract advertisements'."
Question (BY MS. ELLIS). "Okay. So if you turned to TDI 231 and please point out any violations of this Section 21.104(a)(1) that you found on this page.

- 49 -

Luu: "This ad is considered invitation to inquire because she mentioned the $300 premium, which is -- and required to disclose the name of the insurer."

Question. Okay. So why is this a violation of 21.104(a)(1)?

Luu: Because it does not include the name of the insurer, which is a violation.

Question: Okay. Now, please turn to Bates Page 237 to 242 and describe any violations of this section on those pages, please.

Luu: "On Page 237, when she mention the premium and the benefits, which is invitation to inquire; it must disclose the name of the insurer, which is a violation of the rule [28 TAC § 21.104(a)(1)]."

Question. Okay. Please turn to Bates Pages 275 to 278 and describe any violations of this section on these pages.

Luu: "Same thing. This page mention the premium, so it need to disclose the name of the insurer, which is a violation of this rule [28 TAC § 21.104(a)(1)]."

164. However, Luu misinterpreted 28 TAC § 21.104(a)(1) because 28 TAC § 21.104(a)(2) states:

> "(2) It is sufficient to state the full licensed name, assumed name registered with the department pursuant to §19.902 of this title (relating to One Agent, One License) or Texas agent's license number of the agent when advertisements address coverages in general and do not describe a specific policy or coverages of a particular insurer."

Also, Luu explicitly testified to the fact that she did not know if this webpage in question was directed to Texans or made available to Texans.

**Allegations 9, 10, and 11.**

- 50 -

APPENDIX P. 000056

165. Allegations 9, 10, and 11 are based on allegations regarding premiums advertised. Luu testified at the SOAH hearings regarding Allegations 9, 10, and 11 as follows:

Transcript 9/11/12; p 156 lines 23-25, p 157 lines 1-25, and p 158 lines 1-6.

Luu: "The premium mentioned on this page must disclose what is the coverage for, the benefits; therefore - she did not disclose the exact coverage; so, therefore, it's a violation of the rule [28 TAC § 21.106(a)]."

Question (BY MS. ELLIS): "Okay. And if you will please look at TDI Page 281 and explain any violations of Section 21.106(a) on this page."

Luu: "Same thing again. The premium mentioned on this page needed to disclose the exact amount, what does it pay for: The coverage, the benefits. So, therefore, it does not comply with the rules [28 TAC § 21.106(a) :: Allegation 9]."

Question: "And what does Subsection (b) of 21.106 say about ads?"

Luu: "The ad needs to disclose the class risk; for example, for preferred or non-preferred."

Question: "And are there any violations of Subsection (b) on this page, TDI 281?"

Luu: "Yes. Again, the premium mentioned here does not disclose the class risk applied to these premiums; therefore, it's a violation of the rule [28 TAC § 21.106(b) :: Allegation 10]."

Question. Okay. And how about Subsection (c) of 21.106, what does it say about advertisements?

- 51 -

APPENDIX P. 000057

Luu: "Well, optional - anything available as endorsement or riders are optional benefit. If they had to pay additional premium, the ad must disclose there is -- they must be purchased at additional premium."

Question(BY MS. ELLIS): "Okay. And are there any violations of this Subsection (c) on Bates Page 281?"

Luu: "Yes. Because the mention of the optional coverage on this page and so, therefore, it must disclose This option must be purchased at additional premium on this page."[Allegation 10]

166. Luu's testimony regarding 28 TAC § 21.106(a) shown immediately above is a misinterpretation and misapplication because the premium shown on TDI pp 237-238 plainly establishes that the exact coverage to which it applies is liability insurance for a dog owner. Also, the premium shown is a real-life example of a purchase made by consumer. There is no statement in TDI pp 237-238 that this same premium will be charged of every consumer. The text shown constitutes general information, is not an offer of insurance, and is not interactive (i.e. it makes no request that the consumer provide his information in anticipation of obtaining an insurance premium estimate). Further, Luu provided no testimony and no documentary evidence to show that she had navigated the website in question as a Texan would have. She only established that she targeted specific webpages.

167. Luu's testimony regarding 28 TAC § 21.106(b) shown above is a misinterpretation and misapplication. 28 TAC § 21.106(b) states: "If a premium is quoted in an advertisement that does not apply to all classes of risk solicited, the

- 52 -

class or classes to which it applies must be identified." A disclosure is required only if the premium quoted does not apply to all classes. The Defendants did not establish that the premium allegedly quoted did not apply to all classes of risk. Further, Luu's testimony regarding "preferred" and "non-preferred" "classes" relies upon terminology that applies to life, health, and long term care insurance products only. The insurance product shown on TDI p 281 is not a life and health insurance product. There are no rates filed with TDI by any insurance provider that classifies property or casualty insurance rates as either "preferred" or "non-preferred". Further, Luu provided no testimony and no documentary evidence to show that she had navigated the website in question as a Texan would have. She only established that she targeted specific webpages.

168. Luu's conclusion regarding 28 TAC § 21.106(c) shown above is a misinterpretation and misapplication. 28 TAC § 21.106(c) states: "Advertisements referencing optional endorsements, riders or other benefits available at an additional cost, shall disclose the fact of additional cost." Luu erroneously assumed that these optional coverages were "optional endorsements, riders or other benefits" of a single policy. But the fact is that TDI page 281 does not state that these "optional coverages" are endorsements, riders or other benefits of a single policy. In fact, they are separate policies. TDI page 281 does not state that the "optional coverages" will incur additional cost. The disclosure of additional cost is not required if there is no additional cost. Since the "minimum premium" shown on TDI page 281 is $5,000; it is possible that an insurance applicant could purchase all the "optional coverages" for under $5,000. Further, Luu provided no testimony and no documentary evidence

to show that she had navigated the website in question as a Texan would have. She only established that she targeted specific pages.

169. The "optional coverages" shown on TDI 281 are:

Umbrella

Spoilage

Equipment Breakdown

Money & Securities

Property of Others

## Allegation 12.

170. Allegation 12 is based on an allegation regarding the use of statistics. Luu testified at the SOAH hearings regarding Allegation 12 as follows:

Transcript 9/11/12 p 158 lines 18-13

Luu: "There are several statements on these pages must provide the source. For example, the statement, '99.9 percent of the people who buy dangerous dog liability insurance buy it because they are required by law.' So she need to provide support to -- the source to support the statement."

Transcript 9/11/12 p 159 lines 1-4.

Luu: "Yes. Again, the statement, 'Over 90 percent of our applicants are approved.' She need to provide support -- a source to support the statement."

- 54 -

APPENDIX P. 000060

171. Luu misinterpreted and misapplied 28 TAC § 21.108(b). 28 TAC § 21.108(b) applies to "advertising". Not every word is "advertising". 28 TAC § 21.102(2)(B) sets forth that "Advertisement" does not include: "communications with policyholders other than materials urging policyholders to purchase, increase, modify, or retain a policy;"

172. 28 TAC § 21.102(1)(G) sets forth that an advertisement must have the intention to result in an eventual sale or solicitation of a policy. So, once a consumer has made the decision to make a purchase and is in the process of making his purchase, words he sees or hears that do not intend to result in a purchase or to increase the purchase are not classified as advertising but are classified as information necessary for gaining more understanding of the process.

173. For example, an insurance policy is not an advertisement although it may contain the same information that exists in an advertisement. See 28 TAC § 21.102(1)(E).

174. At some point in the process of a consumer purchase, the information received by the consumer shifts from being classified as an advertisement, to being classified as information about the provider, to being classified as information on the process of making the purchase, to being classified as instructions, to being classified as the product purchased.

175. Therefore, the "statistics" referenced in Allegation 12 cannot be in violation of 28 TAC § 21.108(b) because, *inter alia*, these words are not classified as an "advertisement".

176. A simple statement seen in the process of making a purchase regarding why most applicants make such a purchase has no impact on the applicants' motivation for making the purchase; especially given the fact that the consumer has already

- 55 -

made the decision to make the purchase.[31] Further, the "statistic" regarding the approval rate is written in such a way that it is obvious that it is derived from internal, personal data that is not published by a third party (assuming that Luu's definition of "support" means that the "statistic" is published by an independent third party). But Defendants did not define "support" and the Rules do not define "support" which classifies the Defendants' interpretation of 28 TAC § 21.108(b) unconstitutionally vague.

**Luu Is Not Knowledgeable About Property And Casualty Insurance.**

177. All of the issues raised in the NOH related to property and casualty insurance. None of the issues raised in the NOH related to accident and health insurance. Luu's job title at TDI is: "insurance specialist for the Rate and Form Review Office – Accident and Health Program of the Texas Department of Insurance". In fact, the Defendants have no insurance specialists on their staff who are responsible for a "property and casualty insurance program".

178. At the same time, the TIC is divided to separately address the regulation of property and casualty insurance and to separately address the regulation of other types of insurance.[32] The Defendants have established different license types for 1) property and casualty insurance agents, for 2) life and health insurance agents, and

---

[31] Luu's testimony on this issue relied upon a webpage that appeared while the website visitor was in the process of entering his personal information required to make a request to purchase.

[32] For example, these chapters of TIC are dedicated to property and/or casualty insurance only: 221, 252-256, 426, 462, 493, 494, 822, 861, 862, 1802-2751. These chapters of TIC are dedicated to life and health insurance only: 22, 257, 258, 425, 463, 492, 841-848, and 1101-1701.

APPENDIX P. 000062

for 3) long-term care insurance agents. Therefore, any Statute or Rule related to Allegations 3-12 is not valid because it is unconstitutionally vague because it is overbroad: none of these rules specify how they apply to the different license types or how they apply to the regulation of the different lines of insurance.

179. Luu's testimony and the Defendants' hearing exhibits presented in the SOAH hearings establish with certainty that Luu misinterpreted the facts and misinterpreted and misapplied the Rules and Statutes. Luu's job title establishes that the she is not trained in property and casualty insurance. Hunter cannot be punished for failing to comply with Luu's misinterpretations and misapplications and cannot be punished for Luu's failure to understand how her misinterpretations and misapplications were misapplied to property and casualty insurance.

180. Frankly, Luu has an obvious, substantial inability to speak the English language. Luu's obvious misinterpretation and misapplication of the Rules and Statutes established that Luu also has a substantial inability to understand the plain meanings of English words that make up the text of the Rules and Statutes.

181. The Defendants made their Allegations 3-12 based on Luu's October 2009 insurance advertising review despite the fact that Luu's understanding of the English language and her reading comprehension appear to be lower than high-school-education level. There is no public record that indicates that Brenda Luu, whose full name is Brenda Thao-Kim Luu, graduated from high school, attended college, or has been certified by any professional organization. Hunter cannot be punished only as a result of Luu's failure to understand the Rules and Statutes.

**Allegations 1 and 2.**

APPENDIX P. 000063

182. Allegations 1 and 2 relate to a civil contract dispute between Hunter, a resident of Virginia at all times relevant, and an entity that established Illinois as its state of domicile and established its home office location in Utah[33]. The Producer Agreement ("Producer Agreement") between Hunter and this Illinois Company states on its face that it was entered into under the laws of Utah.

183. The Defendants were/are not parties to this Producer Agreement.

184. The Defendants misinterpreted TIC §§ 4005.101(b)(4) and 4005.101(b)(5) to erroneously believe that they could rely upon it to intervene in this Producer Agreement. The Defendants used the NOH to enforce some of the terms, as misinterpreted by the Defendants, of this Producer Agreement on behalf of a third party that is affiliated with the Illinois Company.

185. The Defendants misinterpreted and misapplied TIC §§ 4005.101(b)(4) and 4005.101(b)(5). Allegations 1 and 2 set forth that Hunter violated these Statutes. But Hunter did not violate these Statutes. The Defendants used these Statutes unlawfully to punish Hunter because she refused to conspire with the Illinois Company to violate TIC § 981.007(c)(2).

186. It is unconstitutional to punish Hunter because she did not conspire to violate TIC § 981.007(c)(2).

---

[33] This Illinois company will be referred herein only as "Illinois Company" because the evidence in the SOAH hearing indicated that this Illinois corporation has different holding companies, different corporations, and different entities/agencies/affiliates and that most of them had conducted insurance transactions in Texas without first obtaining, or ever obtaining, the required insurance licenses from TDI to transact insurance in Texas. The NOH refers to this Illinois Corporation as "Prime/Evolution Brokers".

APPENDIX P. 000064

187. The Defendants investigated the issues regarding Allegations 1 and 2 as set forth in the NOH ¶¶ 20-25 on page 5 of 7, and the investigation was closed in February 2011 without any action being taken against Hunter and only after the Illinois Company complied with TIC § 981.007(c)(2).

188. Hunter terminated ties with the Illinois Company. TDI has written documentation dated in 2010 that establishes this fact. But the Defendants fraudulently manipulated the facts in the NOH to give the appearance that Hunter had been terminated sometime in 2011 by the Illinois Company for wrongdoing.

189. To support its false allegations of Hunter's wrongdoing against this Illinois Company, the Defendants' NOH misinterpreted and misapplied TIC §§ 981.007(c) et. seq and 981.007(d). The Defendants placed blame on Hunter for her failure to comply with these TIC's despite the fact that Hunter is not required to comply with said TIC's. These TIC's specifically set forth the Illinois Company's obligations and set forth that the Illinois Company's obligations are absolute and cannot be delegated to any third party. The fact is that this Illinois Company was attempting to conspire with Hunter to violate TIC § 981.007(c)(2) only because the Illinois Company was transacting insurance in Texas, and many other states, without first obtaining the required licenses to do so; and the Illinois Company wanted to use Hunter unlawfully to hide this fact.

190. TIC §§ 4005.101(b)(4) and 4005.101(b)(5) were misinterpreted and misapplied by the Defendants to criminalize Hunter's honest actions and to decriminalize the Illinois Company's dishonest actions.

191. TIC §§ 4005.101(b)(4) and 4005.101(b)(5) are unconstitutionally vague because they are not worded in such a way as to stipulate that Hunter cannot be accused of

- 59 -

such allegations after TDI investigated the matter and closed the investigation. They are unconstitutionally vague because they do not stipulate that Hunter cannot be charged with violations of these Statutes if the source of the dispute arose only due to Hunter's refusal to violate a Statute. They do not stipulate that these Statutes cannot be relied upon to promote or obfuscate the Illinois Company's violations of Rules or Statutes. They do not stipulate that TDI has no jurisdiction over a civil contract. They do not stipulate that TDI has no standing to enforce a civil contract. They do not stipulate that TDI has no standing to enforce only one side of a bilateral civil contract to which it is not a party.[34] They do not stipulate that TDI has no jurisdiction over a civil contract entered into under the laws of Utah. They do not stipulate that TDI has no jurisdiction over a civil contract between a Virginia resident and a Utah resident.

192. The Defendants' misinterpreted and misapplied TIC §§ 4005.101(b)(4) and 4005.101(b)(5). The Illinois Company gave Hunter a check that mixed both a premium refund with commission Hunter had earned. Hunter did not know that this check mixed a customer's refund with commissions she earned. It is a violation of insurance regulations to commingle premium funds with non-premium funds. The

---

[34] The Illinois Company had refused to pay Hunter commission for about eighteen (18) months only on the basis that if one insured was past due on his monthly installment, no commissions would be paid that month. Since there was always one insured who was past due on his installment payment, Hunter received perhaps one commission check in about eighteen months. The SOAH hearing also revealed that the Illinois Company, misappropriated funds, demanded funds, and had not paid Hunter a single penny in commission as it was required to do by the terms of the Producer Agreement. The Defendants fraudulently manipulated the circumstances to charge Hunter with illegal and fraudulent acts as set forth in Allegations 1 and 2.

APPENDIX P. 000066

Illinois Company unlawfully included a premium refund[35] in Hunter's commission check. The Illinois Company simultaneously made an unauthorized debit from the premium refund. Specifically, the Illinois Company had agreed to finance insureds' premiums using their own premium finance company. This finance agreement is between the premium finance company and the insured. When two insureds failed to make their monthly premium payments to the premium finance company, the premium finance company cancelled their policies. But the Illinois Company still wanted to collect the full premium for these cancelled policies. The Illinois Company made no attempt to contact the insureds to collect the full premium. Instead, the Illinois Company unlawfully included a Texas former insured's premium refund in Hunter's commission check. This addition of funds to Hunter's commission check provided enough funds from which the Illinois Company could make the unauthorized debit from Hunter's commission check to pay the full premium of the two cancelled policies. The Illinois Company misappropriated a Texas former insured's premium refund by allocating it to a third party, Hunter, by commingling it unlawfully with Hunter's commission, and simultaneously debiting from that premium refund funds to pay the full premium for the two cancelled policies that were not related in any way to the Texas former insured, to Texas, or to Hunter. The Defendants argued that the Illinois Company had no contract with the insureds and that the Illinois Company's only contract was with Hunter. Therefore, the Illinois Company, which is the insurance company that issued the insurance policies, could

---

[35] Among other reasons, this action was unlawful pursuant TIC § 981.007(c)(2) and was unlawful under federal laws because the Illinois Company had collected the premium directly from the Texan via electronic debit. Hunter had no role in the exchange of funds between the Texan and the Illinois Company.

APPENDIX P. 000067

not transact business directly with the insureds. This is clearly a false argument because it is obvious that the Illinois Company had a contract with its insureds: it's called an insurance policy.

193. The Defendants' misinterpreted and misapplied TIC §§ 4005.101(b)(4) and 4005.101(b)(5) to revoke Hunter's License only because she refused to go along with the Illinois Company's scheme. The Defendants have protected the Illinois Company's unlawful actions.

194. The Defendants have firmly allied themselves with the Illinois Company and have taken no disciplinary action against it. The Defendants have enforced Rules and Statutes against Hunter unequally.

195. The correct interpretation and application of TIC §§ 4005.101(b)(4) and 4005.101(b)(5) is as follows: for example, an insurance agent collects a premium check from an insurance applicant, deposits it in his personal bank account, does not remit it to the insurance company, does not cause the insurance policy to be issued and does not refund the money to the applicant.

## GROUNDS FOR DECLARATORY RELIEF.

196. There is a justiciable controversy between the parties that can be addressed by this Court.

197. This petition is meritorious. The Defendants have abused their authority, acted without authority, and acted to violate laws, violate Statutes, violate constitutions, violate Rules, and violate Hunter's human rights.

- 62 -

APPENDIX P. 000068

198.  The Defendants' actions were/are malicious and vindictive. Hunter has exerted exhaustive effort since December 2011 to persuade the Defendants to cease their crimes against the United States of America and against Hunter to no avail.

199.  The Defendants have caused the entry of an Order of Revocation directed to Hunter. Hunter challenges the constitutionality, interpretation, application, meaning and validity of the Statutes and Rules relied upon by the Defendants in causing the entry of the Order of Revocation. See MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 133 (2007).

200.  One of the fundamental principles of due process of law is fair notice to an ordinary person of what is prohibited. Connally V. General Construction Co., 269 U.S. 385, 391 (1926). Due process requires that laws provide standards to prevent arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)

201.  On the issues set forth herein of unconstitutionally vague Rules and Statutes, the Court held in Grayned v. City of Rockford, "[A] statute is unconstitutionally vague if it either (1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'; or (2) fails to 'provide explicit standards for those who apply [the law].' " See Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972), Musser v. Utah, 333 U.S. 95, 97 (1948), Village of Hoffman Estates v. The Flipside, 455 U.S. 489, 498 (1982)

202.  On the issues set forth herein regarding the assertion that the Rules and Statutes are unconstitutionally vague because they are overly broad: The Defendants relied upon an "Accident and Health Insurance Specialist's" lack of knowledge and

- 63 -

APPENDIX P. 000069

misinterpretations of Rules and Statutes to misapply said Rules and Statutes to property and casualty insurance.

203.    Hunter cannot wait for the appeal process for this Court to construe the relevant Statutes and Rules because the Order of Revocation is dated May 8, 2013, and contains no stipulation that there is a past of future effective date. The burden for Hunter to wait for the appeal process is too great for many reasons. One reason is that Hunter is required by insurance regulations of the various states to report the NOH to about forty-seven (47) state insurance regulators and many have decided to wait to renew Hunter's non-resident insurance licenses pending the outcome of the SOAH hearings. The Arizona Department of Insurance has explicitly made such a statement.  Hunter mailed her request to renew her Arizona non-resident insurance license on October 3, 2012, and the Arizona Department of Insurance has refused to process it and has explicitly stated that it will not process Hunter's request to renew until it knows the outcome of the NOH with the SOAH.  Hunter's renewal of her New Mexico, Texas, and California non-resident insurance licenses, which were/are set to expire on April 30, 2013, May 27, 2013, and May 31, 2013, respectively, are pending review for the same reason. The burden Hunter faces in being denied her fundamental human right to work in her profession only as a result of the unlawful and unconstitutional actions of the Defendants as set forth herein is too great for her to wait for the appeal process for relief. The appeal process requires Hunter to wait at least ninety-five (95) days before Hunter can file the petition for judicial review with this Court. See Abbott Labs. v. Gardner, 387 U.S. 136, 153 (1967) ("Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious

- 64 -

penalties attached to noncompliance, access to the courts under [declaratory actions] must be permitted, absent a statutory bar or some other unusual circumstance . . . .").

204.    Hunter can seek a declaratory judgment even if she is also pursuing a contested case that involves the same issues. <u>See</u> Tex. Gov't Code Ann. § 2001.038(d): "A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question."

## JURY DEMAND.

205.    Hunter is entitled to declaratory relief as a matter of law upon the uncontested facts. But in the event that this Court rules that Hunter is not entitled to declaratory relief, Hunter requests a trial by jury to determine all issues of fact as provided by Tex. Civ. Prac. & Rem. § 37.007

## PRAYER FOR DECLARATORY RELIEF AND ATTORNEY FEES.

206.    Plaintiff respectfully requests that this Court take jurisdiction of this case, and that upon hearing this matter this Court enter a final judgment (1) decreeing that the Defendants have misinterpreted and misapplied the Statutes and Rules, (2) decreeing that the Rules and Statutes set forth herein are unconstitutionally vague, (3) decreeing that the Rules and Statutes set forth herein are unconstitutionally vague as applied, (4) decreeing the Rules and Statutes set forth herein are unconstitutionally vague because they are overly broad, (5) decreeing that the Order of Revocation is void, (6) awarding the Plaintiff her reasonable attorney's fees and

- 65 -

APPENDIX P. 000071

costs, as provided by Tex. Civ. Prac. & Rem. § 37.009; and (7) awarding Plaintiff such further relief to which she may be entitled.

Respectfully Submitted,

Chase Carmen Hunter
Plaintiff, pro se
PO Box 9075
Fredericksburg, VA 22403
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

APPENDIX P. 000072

# CERTIFICATION

I HEREBY CERTIFY, under penalty of law, that the facts in the above Original Verified Petition for Declaratory Judgment are true and accurate and that the arguments in the above Original Verified Petition for Declaratory Judgment are made in good faith and are meritorious.

IN WITNESS, Chase Carmen Hunter has signed this Affidavit below:

_____(SEAL)

*Chase Carmen Hunter*

Commonwealth of Virginia

City/County of Spotsylvania, to-wit:

Subscribed and sworn to before me this 25 day of May 20 13 , by Chase Carmen Hunter

My commission expires:
Registration Number:

LINDSEY NICOLE SHIPE
NOTARY PUBLIC
REG. #7550307
MY COMMISSION
EXPIRES
05/31/17
COMMONWEALTH OF VIRGINIA

Cause No. <u>D-1-GN-13-001957</u> COPY

CHASE CARMEN HUNTER,          IN THE DISTRICT COURT OF

Plaintiff,

v.                                                    TRAVIS COUNTY, TEXAS

ELEANOR KITZMAN IN HER
OFFICIAL CAPACITY AS
COMMISSIONER OF INSURANCE,
JOHN/JANE DOE IN HIS/HER
OFFICIAL CAPACITY AS INTERIM
COMMISSIONER OF INSURANCE,
OR AS COMMISSIONER OF
INSURANCE, AND THE TEXAS
DEPARTMENT OF INSURANCE,
SERVE GREG ABBOTT, THE
ATTORNEY GENERAL OF TEXAS,

Defendants.          <u>250th</u>      JUDICIAL DISTRICT

Filed In The District Court
of Travis County, Texas

JUN 07 2013

At_____10:50 A. M.
Amalia Rodriguez-Mendoza, Clerk

## <u>MOTION PURSUANT LOCAL RULE 10.5.1 (11/2006)</u>

TO THE HONORABLE JUDGE OF THIS COURT:

**COMES NOW,** Chase Carmen Hunter ("Plaintiff"), herein referred to as "Hunter", and files this Motion Pursuant Local Rule 10.5.1 (11/2006) ("Motion LR 10.5.1").

Hunter is simultaneously filing an Original Verified Petition For Declaratory Judgment ("Petition") that is sixty-seven (67) pages in length. Hunter does not believe that this Petition is limited to being fifty (50) pages in length pursuant Local Rule 10.5.1 (11/2006) because this Petition is being filed pursuant the Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem Code § 37.003, et seq. and Texas Gov't Code §

APPENDIX P. 000074

2001.038 et seq. Hunter believes that Local Rule 10.5.1 applies to petitions filed only pursuant Texas Gov't Code § 2001.038 et seq.

But since Hunter has no prior experience with this Court, Hunter files this Motion LR 10.5.1 in the event that this court determines, with or without notice to Hunter, that her Petition is subject to the page limitations of Local Rule 10.5.1. In such a circumstance, Hunter respectfully requests that this Court grant her leave to file her sixty-seven (67) page Petition.

The Petition is sixty-seven (67) pages long because the Defendants knowingly abandoned the essential elements of law since December 2011, made multiple, gross misinterpretations and misapplications of about twenty (20) or more administrative agency rules ("Rules") and Texas Statutes ("Statutes"), applied unconstitutionally vague Rules and Statutes, applied Rules and Statutes unconstitutionally to Hunter, applied overbroad Rules and Statutes to Hunter, acted without regard for the United States Constitution and the Texas Constitution, and acted without regard for the laws of Texas and the laws of the United States. The counsel of record for the Texas Department of Insurance ("TDI"), Whitney Ellis ("Ellis"), actively litigated a sham administrative action againt Hunter in the State Office of Administrative Hearings ("SOAH") since December 2011. After the final hearing on the merits in the SOAH, after the Administrative Law Judge ("ALJ") had issued his Proposal For Decision ("PFD"), and two days after Hunter notified Ellis of a complaint she filed against Ellis with the State Bar of Texas alleging multiple violations of the Disciplainary Rules of Professional Conduct, Ellis filed a Motion To Dismiss the administrative action against Hunter.

The Defendants' actions are so egregious, so extensive, and so utterly unconscionable that Hunter believes that the length of the Petition was unavoidable and was dictated by the Defendants' actions.

**WHEREFORE, PREMISES CONSIDERED,** if this Court deems that Local Rule 10.5.1 is applicable to this filing, the Plaintiff respectfully requests this Court grant this Motion LR 10.5.1 and to grant any other relief to which Hunter is entitled.

Respectfully Submitted,

*C C Hub*

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
(707) 706-3647 (Phone)
(703) 997-5999 (Fax)
Plaintiff, pro se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion LR 10.5.1 was served upon the parties shown below as indicated

Chief Clerk
Texas Department of Insurance
ChiefClerk@tdi.texas.gov

Greg Abbott, Attorney General of Texas
greg.abbott@texasattorneygeneral.gov

*CC Hub*

Chase Carmen Hunter

Cause No. D-1-GN-13-001957

| | |
|---|---|
| CHASE CARMEN HUNTER, | IN THE DISTRICT COURT OF |
| Plaintiff, | |
| v. | TRAVIS COUNTY, TEXAS |
| ELEANOR KITZMAN IN HER OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE, JOHN/JANE DOE IN HIS/HER OFFICIAL CAPACITY AS INTERIM COMMISSIONER OF INSURANCE, OR AS COMMISSIONER OF INSURANCE, AND THE TEXAS DEPARTMENT OF INSURANCE, SERVE GREG ABBOTT, THE ATTORNEY GENERAL OF TEXAS, | |
| Defendants. | 250th JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas BD

JUN 07 2013

At _____10:50 A.M.
Amalia Rodriguez-Mendoza, Clerk

## MOTION TO APPEAR BY AFFIDAVIT AND BY TELEPHONE FOR

## ANY AND ALL HEARINGS

## AND

## MOTION FOR COURT-APPOINTED COUNSEL TO ASSIST THE PLAINTIFF

TO THE HONORABLE JUDGE OF THIS COURT:

**COMES NOW,** Chase Carmen Hunter ("Plaintiff"), herein referred to as "Hunter", and files this Motion To Appear By Affidavit and By Telephone For Any And All Hearings And Motion For Court-Appointed Counsel To Assist The Plaintiff.

APPENDIX P. 000077

It is not possible for Hunter to appear in person because she is a resident of Virginia, has been a resident of Virginia for more than twenty-five (25) years, has never resided in Texas, has not been in Texas since the year 2001 or 2002, and is indigent[1]. Hunter is indigent, in part, due to her extended distraction from being able to substantially perform her job duties because she has had to devote her time, money and resources defending the underlying administrative cause brought against her by the Defendants in Decemeber 2011. Hunter's Original Verified Petition for Declaratory Judgment sets forth throughout and in numbered paragraph 203 that the Defendants' unconscionable actions have seriously injured Hunter's professional reputation on a national scale. Hunter has had to exhaust countless hours to try to mitigate the damage, if possible, inflicted upon her maliciously by the Defendants.

The Original Verified Petition For Declaratory Judgment is indubitably meritorious.

It is well settled in Texas law that when a person cannot appear personally during a civil action, the person should be allowed to proceed by affidavit, deposition, telephone, or other effective means. See Reyna v. Mitchell, 2008 WL 5062954 at *2; In re Marriage of Bolton, 256 S.W.3d at 833 (Tex.App.-Dallas 2008, no pet.), Boulden v. Boulden, 133 S.W.3d 886-87 (Tex.App.-Dallas 2004, no pet.), Green v. Kaposta, No. 05-08-01041-CV, 2009 WL 4045249, *1 (Tex. App.-Dallas Nov. 24, 2009, no pet.) (mem. op.), In re R.C.R., 230 S.W.3d at 426; Sweed, 139 S.W.3d at 452; Allen v. Rushing, 129 S.W.3d 226, 230 (Tex.App.-Texarkana 2004, no pet.); Aguilar v. Alvarado, 39 S.W.3d 244, 248 (Tex.App.-Waco 1999, pet. denied).

For all the reasons set forth herein and set forth in the Original Verified Petition for Declaratory Judgment, Hunter respectfully requests that this Court appoint a lawyer,

---

[1] See Original Verified Motion To Proceed In Forma Pauperis

without charge, who will assist Hunter in her continued efforts to protect her constitutional rights and human rights.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff respectfully requests that this Court grant the Motion To Appear By Affidavit and By Telephone For Any And All Hearings And Motion For Court-Appointed Counsel To Assist The Plaintiff and to grant any other relief to which Hunter is entitled.

Respectfully Submitted,

_____
Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
(707) 706-3647 (Phone)
(703) 997-5999 (Fax)
Plaintiff, pro se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion To Appear By Affidavit and By Telephone For Any And All Hearings And Motion For Court-Appointed Counsel To Assist The Plaintiff was served upon the parties shown below as indicated

Chief Clerk
Texas Department of Insurance
ChiefClerk@tdi.texas.gov

Greg Abbott, Attorney General of Texas
greg.abbott@texasattorneygeneral.gov

_____
Chase Carmen Hunter

PLEASE DELIVER TO JUDGE JOHN K DIETZ

Cause No. **D-1-GN-13001957**

CHASE CARMEN HUNTER,          IN THE DISTRICT COURT OF

              Plaintiff,

v.                            TRAVIS COUNTY, TEXAS

ELEANOR KITZMAN IN HER
OFFICIAL CAPACITY AS
COMMISSIONER OF INSURANCE,
JOHN/JANE DOE IN HIS/HER
OFFICIAL CAPACITY AS
INTERIM COMMISSIONER OF
INSURANCE, OR AS
COMMISSIONER OF INSURANCE,
AND THE TEXAS DEPARTMENT OF
INSURANCE, SERVE GREG
ABBOTT, THE ATTORNEY
GENERAL OF TEXAS,

              Defendants.   250TH JUDICIAL DISTRICT


**VERIFIED MOTION DIRECTLY FILED WITH JUDGE JOHN K. DIETZ FOR WRIT OF MANDAMUS AND PROHIBITION DIRECTED TO THE HONORABLE AMALIA RODRIGUEZ-MENDOZA, CLERK OF THE DISTRICT COURT OF TRAVIS COUNTY TEXAS**


**CERTIFICATION.**

I, Chase Carmen Hunter, state under penalty of perjury that the following facts and argument are true and correct.

- 1 -

APPENDIX P. 000081

*cepltr*                                   *July 11, 2013*

**STATEMENT OF THE ISSUES.**

1. The Honorable Amalia Rodriguez Mendoza ("Mendoza") has interfered in the jurisdiction of Hunter's case D-1-GN-13001957 (this case).

2. Any reference to Mendoza includes any people in Mendoza's office with whom Hunter has had contact.

3. Mendoza has refused to provide Hunter with the customary services provided any other party.

4. Mendoza is the Clerk of the District Court in Travis County, Texas. Her physical address is 1000 Guadalupe St. Austin, TX 78701.

5. Mendoza has acted contrary to Hunter's substantive and procedural Due Process rights and contrary to Texas Rules of Civil Procedure Rule 145 et seq. Mendoza has told Hunter that she cannot file a motion for court-appointed counsel. Mendoza has refused to respond to Hunter's repeated requests for a current status of her case #D-1-GN-13001957. Mendoza has taken steps to prohibit this Court's jurisdiction. Mendoza has blocked Hunter from accessing this Travis County District Court ("TCDC"). Mendoza has denied Hunter the protection of the law and of the courts.

-2-

**STATEMENT OF JURISDICTION.**

6. This Court has jurisdiction to grant this petition for writ of mandamus and prohibition under Section 24.011 of the Texas Government Code and Texas Rule of Civil Procedure 74.

## ISSUES PRESENTED FOR PETITION FOR WRIT OF MANDAMUS AND PROHIBITION

1. Whether or not Mendoza has interfered this Court's jurisdiction by violating Hunter's substantive and procedural Due Process rights by refusing to comply with Texas Rule of Civil Procedure 145 (a) which sets forth that upon the filing of the affidavit [of indigency], the clerk must "docket the action, issue citation and provide such other customary services as are provided any party."

   a. Hunter has called Mendoza's office as many times as eight (8) times in one day without reaching a person or voicemail system. Sometimes, Hunter reaches a person by telephone who has told Hunter that she has no answers to basic questions regarding the docketing and processing of Hunter's action. Hunter has sent facsimiles to Mendoza requesting status updates of her case. But Mendoza has refused to respond. Mendoza has contacted Hunter and has left only mysterious voicemail messages and has sent only mysterious emails that only ask Hunter to contact Mendoza. But no details are provided. Hunter has attempted to return such mysterious communications received from Mendoza's office but a person seldom answers the telephone, there is no voicemail system, and the person who answers is unable to find Hunter's Pet DJ, unable to explain why the attempt to electronically file was rejected, and unable to provide a status of the processing of Hunter's action.

   b. Mendoza has refused to give Hunter free access to Mendoza's docket information system so that Hunter can view the status of her case. Providing Hunter with access to view the docket entries of her case is a customary service that is provided any other party. Since Hunter has filed an affidavit of indigency and is indigent, Mendoza is required to provide Hunter free access to the docket information system to view the

-3-

progress of her case, or in the alternative, send Hunter the information that can be found in the idocket.com information system by facsimile once per week.

2. Whether or not Mendoza has interfered and is interfering in this Court's jurisdiction by violating Hunter's substantive and procedural Due Process rights by attempting to circumvent the requirement of Texas Rule of Civil Procedure 145 (d) by
   a. denying Hunter's affidavit [of indigency],
   b. trying to communicate her denial of Hunter's affidavit [of indigency] by telephoning Hunter, and
   c. communicating a denial of Hunter's affidavit [of indigency] by emailing Hunter.

## ISSUES PRESENTED FOR PETITION FOR DECLARATORY RELIEF

1. Whether or not Mendoza is violating and has violated Hunter's Due Process rights and Texas Rule of Civil Procedure ("TRCP") Rule 145(a) and has refused to perform her ministerial duties by
   a. failing to "provide such other customary services as are provided any party". Mendoza has refused to issue citations, refused to cause the service of process upon the defendants, has refused to answer her telephone when Hunter calls her, has refused to respond to Hunter's facsimiles, and has refused to give Hunter free access to Mendoza's docket information system so that the Hunter can view the status of her case. Providing Hunter with access to view the docket entries of her case is a customary service that is provided any other party. Since Hunter has filed an affidavit of indigency and is indigent, Mendoza is required to provide Hunter with free access to the docket information system to view the progress of her case, or in the alternative, send Hunter the information that can be found in the idocket.com information system by facsimile once per week.
   b. telling Hunter that she cannot file a motion for court-appointed counsel and refusing to file said motion.

## STATEMENT OF FACTS.

-4-

7. Hunter filed her Original Verified Petition for Declaratory Judgment ("Pet DJ") with Mendoza's office on May 25, 2013, by electronic filing. Hunter received correspondence from Ruben Tamez, who works in Mendoza's office, stating only that this electronic filing was rejected and that Hunter needed to contact Mendoza.

8. On June 16, 2013, Hunter sent a facsimile to every district court in Travis County as follows:

> "To Whom It May Concern:
>
> I attempted to electronically file my civil petition and two motions on May 25, 2013. My filing was rejected with no reason given. I was directed to contact Ruben Tamez by telephone to discuss what I needed to successfully file my civil petition. I called the telephone number given, 512-854-5841, eight (8) times on June 3, 2013. But Mr. Tamez did not answer and there is no voicemail. A woman answered two or three times but could not tell me why my filing was rejected because she did not know.
>
> I therefore mailed my civil petition along with three motions on June 4, 2013, to the address shown on your website which is PO Box 1748, Austin TX 78767. The tracking number of my mailed envelope is 9505500001113155000188. The United States Postal Service insists that my envelope was delivered. Yet, my petition has not yet been docketed. I spoke with Mr. Tamez on June 10th and 14th, 2013, and he states that he cannot find my petition.
>
> I am especially disappointed to be told by Mr. Tamez that the PO Box shown on your website is not the correct mailing address for the civil district court. Mr. Tamez told me on June 14, 2013, that PO Box 679003 is the correct mailing address.
>
> I am indigent and I have now spent more than $14 in postage and electronic filing fees and my petition has not been docketed and cannot be found. I have also spent money printing the approximate 100 pages that make up the petition and three motions that seem to be lost.

-5-

> I am desperately seeking your help in locating my civil petition and three motions and docketing them promptly.
>
> Please, look for my civil petition and my three motions and docket them expeditiously."

9. During one telephone call on June 3, 2013, Hunter spoke with Brooke Daniel[1] ("Daniel") who told Hunter that Daniel did not know why the electronic filing of Hunter's Pet DJ was rejected. Daniel was able to view Hunter's electronic filing and told Hunter that Hunter could not file a motion for court-appointed counsel [which was filed electronically along with the Pet DJ]. Hunter explained to Daniel that Hunter could not withhold or withdraw a motion she wanted to file based only on Daniel's suggestion and that Hunter was seeking a ruling by the judge on the motion.

10. On about June 18, 2013, Hunter was contacted by Mendoza and given a case number for her Pet DJ which is **D—1—GN—13001957.** Hunter subsequently received from Mendoza file-stamped copies of the first pages of her Pet DJ and accompanying motions that she mailed to Mendoza on June 4, 2013. The file stamps show that the pages were file stamped on June 7, 2013, and the date of mailing of said file-stamped copies to Hunter was June 19, 2013.

---

[1] She is also erroneously referred to as "Brook Daniels". Her correct name is "Brooke Daniel".

- 6 -

11. On June 18, 2013, Hunter sent the following letter by facsimile:

"To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE: D-1-GN-13001957**

Dear Ms. Daniels:

I received a voicemail from you today but you did not tell me what you need. I called you back and left a voicemail message. I called a total of three of four times.

I still cannot find my case on iDocket.com.

I am indigent and cannot afford to pay to buy CHIPS on iDocket.com to view my case which costs a whopping $14 to view the case the first time and $7 each additional time.

As you can see by my petition, I have been defending an unconscionable government action against me since 2011, and defending this unreasonable action has made it difficult for me to perform my job duties and to earn a living.

Is there a way that you can communicate with me by fax? Fax number is 703-997-5999. Otherwise, I will keep trying to reach you by phone."

12. On June 25, 2013, Hunter sent the following letter by facsimile:

"To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE: D-1-GN-13001957**

Dear Ms. Daniels:

I received a voicemail message from you at 5:26pm EST on June 18, 2013, and at 10:14am EST on June 19, 2013. Your voicemail messages only asked that I call you. You have

-7-

never communicated with me any reason why you are calling or what you need. You have always stated only that you want me to call you. However, I have called you repeatedly and there is no answer. I have left voicemail messages.

I sent you a fax on June 18, 2013, asking you to communicate with me in writing due to this communication problem.

I do not understand the very mysterious nature of your communication with me and the fierce effort I must exhaust just to get my petition docketed and to try to understand the mysterious communications from you and Ruben in which you both simply state that you need me to contact you. But each and every time I call either one of you, there is no answer and Ruben has no voicemail.

Please, communicate with me the specific reasons why you are calling me by fax. Fax number is 703-997-5999."

13. On June 25, 2013, Hunter sent the following second letter

by facsimile and email:

"**From:** <--Chase Hunter--> [mailto:ChaseH@ChaseAgency.com]
**Sent:** Tuesday, June 25, 2013 1:41 PM
**To:** 'Brooke Daniel'
**Subject:** RE: reply to fax

Dear Ms. Daniel:

Can you provide me with a court order that communicates this decision please?

I cannot appeal an email. I need a court order. Can you fax this court order to me and mail the order to me?

Fax: 703-997-5999
mail: PO Box 9075
Fredericksburg, VA 22403

Thank you,
Chase Hunter

**From:** Brooke Daniel [mailto:Brooke.Daniel@co.travis.tx.us]
**Sent:** Tuesday, June 25, 2013 1:21 PM
**To:** chaseh@chaseagency.com
**Subject:** reply to fax

- 8 -

Ms. Hunter,

I am currently at my desk and if you call me now I can help you. I'm sorry if you have had trouble reaching me. You have been sending a fax to the judge's office, but I work in the district clerk's office. If you must send a fax to me, please send it to my fax number at (512)854-6627.

I was calling to inform you that your Affidavit of Inability to pay costs was not approved. We did not waive the filings fees, however, you were approved for a payment plan. Also, if you would like any citations to be issued, please request them in writing. Also, we do not accept fax filings so you will have to either mail in your letter requesting service, or eFile it if you are not able to file in person. Please be advised that you will be responsible for the citation and constable service fees, and these will be added to your payment plan if you would like to request service. I will be at my desk for rest of the day if you would like to call me with any questions, or feel free to reply to this email.

Brooke Daniel
53rd Court Clerk
Travis County District Clerk
1000 Guadalupe St., 3rd Floor
Austin, Texas 78701
Tel: (512)854-5881
Fax: (512)854-6627"

14. On June 25, 2013, Hunter sent the following third letter by facsimile:

"To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE: D-1-GN-13001957 – THIRD FAX FOR JUNE 25, 2013**

Dear Ms. Daniels:

I received a voicemail message from you on June 25, 2013 at 3:59pm EST. You stated: "I had a couple of things to tell you about your case that I would like to tell you over the phone and not in a message." As you can see by my petition,

-9-

I am defending an unconscionable government action and you work for that same government. I am very concerned at how much effort I had to exert just to get my petition docketed.

In response to your email which I have attached, the Texas Rules of Civil Procedure do not give you discretion under Rule 145(a) to refuse to docket, issue citations, and provide such other customary services. However, Rule 145(d) allows the clerk to contest the affidavit by filing a written contest. See below.

Given that this is the law of Texas, I expect that you will treat me in accordance with the law.

As such, you must issue citations and provide such other customary services.

**RULE 145. AFFIDAVIT OF INDIGENCY**

(a) *Affidavit*. In lieu of paying or giving security for costs of an original action, a party who is unable to afford costs must file an affidavit as herein described. A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs. **Upon the filing of the affidavit, the clerk must docket the action, issue citation and provide such other customary services as are provided any party**.

 (d) *Contest*. The defendant or the clerk may contest an affidavit that is not accompanied by an IOLTA certificate by filing a written contest giving notice to all parties and, in an appeal under Texas Government Code, Section 28.052, notice to both the small claims court and the county clerk. A party's affidavit of inability that attests to receipt of government entitlement based on indigency may be contested only with respect to the veracity of the attestation. Temporary hearings will not be continued pending the filing of the contest. If the court finds at the first regular hearing in the course of the action that the party (other than a party receiving a governmental entitlement based on indigency) is able to afford costs, the party must pay the costs of the action. Reasons for such a finding must be contained in an order. Except with leave of court, no further steps in the action will be taken by a party who is

- 10 -

found able to afford costs until payment is made. If the party's action results in monetary award, and the court finds sufficient evidence monetary award to reimburse costs, the party must pay the costs of the action. If the court finds that another party to the suit can pay the costs of the action, the other party must pay the costs of the action."

15. Since June 25, 2013, Hunter has contacted Mendoza many times by facsimile and by telephone and requested basic status information about her case. Mendoza has been non-responsive.

16. Hunter can view the basic status information about her case on idocket.com which is the electronic information system provided by Mendoza for use by the general public.

17. But the only information provided for free on idocket.com is the style of the case. If additional information is requested, the requestor is required to purchase CHIPS. Two CHIPS are required to view the case information the first time. One CHIP is required for each subsequent day. Five CHIPS cost $32.49. Essentially, it costs about $14 for Hunter to simply view her case information the first time on idocket.com and $7 each additional day.

18. Since Hunter filed an affidavit of indigency, Mendoza is required pursuant TRCP 145(a) to provide Hunter with the same services provided any other person without charge.

19. But Mendoza has no established system for granting Hunter access to her case information on idocket.com without charge.

20. Mendoza has refused to respond to Hunter's requests made by telephone and by facsimile asking for the status details of her case that can be otherwise viewed on idocket.com.

21. Upon information and belief, Mendoza has not issued the citations and has not taken steps to cause the service of process upon the Defendants. Hunter has received no correspondence from the defendants or from Mendoza.

22. The TCDC cannot legally take jurisdiction over the defendants if there is no proof of service of process in the record.

23. Mendoza's refusal to issue citations and to effect service of process upon the Defendants is blocking the TCDC's jurisdiction in case D-1-GN-13001957.

**ARGUMENT.**

**GROUNDS TO GRANT PETITION FOR WRIT OF MANDAMUS AND PROHIBITION.**

24. There is no adequate remedy by appeal because Mendoza is blocking this Court's jurisdiction. Mendoza has shut and locked the courthouse doors so that Hunter cannot enter.

25. Mendoza is refusing to perform her ministerial duties.

26. Mendoza is refusing to comply with TRCP 145(a).

27. Mendoza is denying Hunter her substantive and procedural Due Process rights.

**PRAYER FOR WRIT OF MANDAMUS AND PROHIBITION.**

- 12 -

28. Plaintiff respectfully requests that this Court review this matter and (1) grant this petition for a writ of mandamus and prohibition and prohibit Mendoza from blocking the TCDC's jurisdiction, (2) direct Mendoza to (a) issue citations in TCDC case D-1-GN-13001957, (b) cause service of process upon the defendants in TCDC case D-1-GN-13001957, and (c) provide all customary services provided any other party without charge, (3) enter an order that declares that Mendoza must provide Hunter with free access to idocket.com so that Hunter can view her case progress, or in the alternative, that Mendoza send Hunter a weekly statement by facsimile that accurately reflects the activity of TCDC case D-1-GN-13001957, (4) direct Mendoza to perform her ministerial duty to accept and file all pleadings Hunter presents for filing[2], and (5) awarding Hunter such further relief to which she may be entitled.


Respectfully Submitted,

*ee Hh*

Chase Carmen Hunter
Plaintiff, pro se
PO Box 9075
Fredericksburg, VA 22403
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

---

[2] See In re Bernard, 993 S.W.2d 453, 454 (Tex-App.-Houston [1st Dist] 1999, orig. proceeding). See also DeLeon v. District Clerk, 187 S.W.3d 473, 474 (Tex. Crim.App.2006)(orig. proceeding)

- 13 -

APPENDIX P. 000093

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing MOTION FOR WRIT OF MANDAMUS AND PROHIBITION DIRECTED TO THE HONORABLE AMALIA RODRIGUEZ-MENDOZA, CLERK OF THE DISTRICT COURT OF TRAVIS COUNTY TEXAS was served upon the parties shown below as indicated

Chief Clerk
Texas Department of Insurance
ChiefClerk@tdi.texas.gov

Greg Abbott, Attorney General of Texas
greg.abbott@texasattorneygeneral.gov

Amalia Rodriguez-Mendoza
Amalia.Mendoza@co.travis.tx.us

_Chase Carmen Hunter_

Chase Carmen Hunter

- 14 -



## iDocket.com Service

Your iDocket.com subscription does not include, in the Basic Access Plan, the ability to use the feature you have selected.

The service is, however, available for a charge.

Additional Name, Advanced and Case Number Search - 1 CHIP for each Search.
Case History - 2 CHIPS first time a case is viewed, 1 CHIP afterward per day.

Please indicate how you would like to proceed by clicking the appropriate button below.

[ Purchase CHIPS ]        [ Upgrade My Subscription ]        [ Cancel ]

Copyright © 1999-2013 iDocket.com. All rights reserved.
Unauthorized access is prohibited. Usage will be monitored.

APPENDIX P. 000095

**iDocket.com**    Your gateway to court case information.

| Quantity of CHIPS | Gold Plan | Silver Plan | Bronze Plan | Free Plan |
|---|---|---|---|---|
| 5 | $ 24.99 | $ 27.49 | $ 29.99 | $ 32.49 |
| 40 | $ 179.99 | $ 199.99 | $ 219.99 | $ 239.99 |
| 200 | $ 799.99 | $ 899.99 | $ 999.99 | $ 1099.99 |
| 500 | $ 1999.99 | $ 2249.99 | $ 2499.99 | $ 2749.99 |

**User ID:** hulk900
**Subscription Type:** Free    **Billing Term:** Monthly    **Expiration Date:** 06/01/2023    **CHIP Balance:** 0

**Number CHIPS**    5

**Credit Card Number:**

**Credit Card Type:**

**Expiration date:**

**Cardholder's First Name:**

**Cardholder's Last Name:**

**ALERT!**

A signed Memorandum of Agreement is required to be filed with iDocket.com before document images can be purchased with CHIPS
*Allow 24 hours to process

Processing your payment may take a moment. To prevent your account from being drafted more than once, click the **'Submit'** button only **one** time.

Submit    Cancel

* You must read, print, sign and fax the Memorandum of Agreement to purchase document images.

About CHIPS    Upgrade Plan

APPENDIX P. 000096

| Filed Date & Time | |
| --- | --- |
| **Date:** | **Time | Time Zone:** |
| Tuesday, May 28, 2013 | 4:35 AM | Central (U.S. and Canada) |

**Filing Status Definitions** ··· Filing Status Information ···

**Trace Number:** ED227J017508193
**Current Status: ! Alert** (see clerk comments)

**Clerk Comments:** Mrs Hunter, I had to reject your petition. If you could please contact me at 512-854-5841 to discuss what needs to be done to file this petition with the court. Thank you. Ruben Tamez.

| Fee | Est.Amount |
| --- | --- |
| **Filing Fees:** | |
| Petition or Application: Civil | $252.00 |
| **Other Services Provided:** | |
| Clerk Fee Adjustment | -$282.00 |
| Jury Fee | $30.00 |
| **ProDoc, Inc.:** | |
| eFiling/eService Fee | $3.00 |
| 8.25% Sales Tax | $0.25 |
| **State eFiling Processing Fees:** | |
| Electronic Processing | $5.19 |
| **Total Estimated Fees:** | $8.44 |
| **Final Amount Billed:** | $0.00 |

**Payment Information**

**Payment Method:** Credit Card
**Address:** PO Box 9075
Fredericksburg, VA 22403
**Credit Card Type:** Visa
**Card Number:** XXXX XXXX XXXX 8223
**Cardholder Name:** chase carmen Hunter

**Personal Information**

**Filer:** chase hunter
**Attorney of Record:** chase hunter
**Firm or Organization:** Chase Carmen Hunter
**DL Number:** T59602376
**Address:** PO Box 9075
Fredericksburg, VA 22403
**Phone:** (540) 429-8660
**Fax:** (XXX) XXX
**Email:** chase_hunter@yahoo.com

**Filing Information**

**Case Title:** Hunter v. Kitzman, et al
**Matter Number/**
**Description:** Original Verified Petition For Declaratory Judgmen
**Sealed Case:** No
**County Name:** Travis
**Court Type:** District
**Jurisdiction:** Travis District - Civil
**Document Type:** Petition or Application: Civil
**Petitioner(s) / Plaintiff(s):**
  chase hunter
**Other Services Requested:**
  Jury Fee
  Clerk Fee Adjustment
    Adjustment Amount: -282

**Document Information**

[ Refresh Documents ]

**Total Pages:** 76
**Document Being Filed:**
 Petitionex.pdf

| Attachments: |
| --- |
| Motionifp.pdf |
| motiontoappeartelelawyer.pdf |

**Service Recipients**

APPENDIX P. 000097

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
June 16, 2013

To: All Travis County Civil and Criminal District Courts as follows:

53rd Civil fax: 512-854-9332
98th Civil fax: 512-854-9338
126th Civil fax: 512-854-9332
200th Civil fax: 512-854-4523
201st Civil fax: 512-854-2268
250th Civil fax: 512-854-9332
261st Civil fax: 512-854-9332
345th Civil fax: 512-854-4540
353rd Civil fax: 512-854-9332
419th Civil fax: 512-854-2224
147th Criminal fax: 512-854-4464
167th Criminal fax: 512-854-6425
299th Criminal fax: 512-854-4464
331st Criminal fax: 512-854-9140
390th Criminal fax: 512-854-4680
403rd Criminal fax: 512-854-4683
427th Criminal fax: 512-854-2227
magistrate fax: 512-854-9140

**RE:  A Petition styled Chase Carmen Hunter v. Eleanor Kitzman et al., and three related motions I mailed to Travis County District Court that have not been docketed and appear to be lost somewhere in the District Court, and I am trying to locate them and get them docketed.**

To Whom It May Concern:

I attempted to electronically file my civil petition and two motions on May 25, 2013. My filing was rejected with no reason given. I was directed to contact Ruben Tamez by telephone to discuss what I needed to successfully file my civil petition.  I called the telephone number given, 512-854-5841, eight (8) times on June 3, 2013. But Mr. Tamez did not answer and there is no voicemail. A woman answered two or three times but could not tell me why my filing was rejected because she did not know.

I therefore mailed my civil petition along with three motions on June 4, 2013, to the address shown on your website which is PO Box 1748, Austin TX 78767. The tracking number of my mailed envelope is 9505500001113155000188. The United States Postal Service insists that my envelope was delivered.  Yet, my petition has not yet been docketed.  I spoke with Mr. Tamez on June 10th and 14th, 2013, and he states that he cannot find my petition.

I am especially disappointed to be told by Mr. Tamez that the PO Box shown on your website is not the correct mailing address for the civil district court.  Mr. Tamez told me on June 14, 2013, that PO Box 679003 is the correct mailing address.

I am indigent and I have now spent more than $14 in postage and electronic filing fees and my petition has not been docketed and cannot be found.  I have also spent money printing the approximate 100 pages that make up the petition and three motions that seem to be lost.

I am desperately seeking your help in locating my civil petition and three motions and docketing them promptly.

Please, look for my civil petition and my three motions and docket them expeditiously.


Sincerely,

/cch/

Chase Carmen Hunter

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
June 18, 2013

To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE:  D-1-GN-13001957**

Dear Ms. Daniels:

I received a voicemail from you today but you did not tell me what you need.  I called you back and left a voicemail message. I called a total of  three of four times.

I still cannot find my case on iDocket.com.

I am indigent and cannot afford to pay to buy CHIPS on iDocket.com to view my case which costs a whopping $14 to view the case the first time and $7 each additional time.

As you can see by my petition, I have been defending an unconscionable government action against me since 2011, and defending this unreasonable action has made it difficult for me to perform my job duties and to earn a living.

Is there a way that you can communicate with me by fax? Fax number is 703-997-5999.  Otherwise, I will keep trying to reach you by phone.


Sincerely,

/cch/

Chase Carmen Hunter

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
June 25, 2013

To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE:  D-1-GN-13001957**

Dear Ms. Daniels:

I received a voicemail message from you at 5:26pm EST on June 18, 2013, and at 10:14am EST on June 19, 2013. Your voicemail messages only asked that I call you. You have never communicated with me any reason why you are calling or what you need. You have always stated only that you want me to call you. However, I have called you repeatedly and there is no answer.  I have left voicemail messages.

I sent you a fax on June 18, 2013, asking you to communicate with me in writing due to this communication problem.

I do not understand the very mysterious nature of your communication with me and the fierce effort I must exhaust just to get my petition docketed and to try to understand the mysterious communications from you and Ruben in which you both simply state that you need me to contact you. But each and every time I call either one of you, there is no answer and Ruben has no voicemail.

Please, communicate with me the specific reasons why you are calling me by fax. Fax number is 703-997-5999.


Sincerely,

/cch/

Chase Carmen Hunter

## <--Chase Hunter-->

| | |
|---|---|
| **From:** | <--Chase Hunter--> <ChaseH@ChaseAgency.com> |
| **Sent:** | martes, 25 de junio de 2013 01:41 p.m. |
| **To:** | 'Brooke Daniel' |
| **Subject:** | RE: reply to fax |

Dear Ms. Daniel:

Can you provide me with a court order that communicates this decision please?

I cannot appeal an email. I need a court order.  Can you fax this court order to me and mail the order to me?

Fax: 703-997-5999
mail: PO Box 9075
Fredericksburg, VA 22403

Thank you,
Chase Hunter

**From:** Brooke Daniel [mailto:Brooke.Daniel@co.travis.tx.us]
**Sent:** Tuesday, June 25, 2013 1:21 PM
**To:** chaseh@chaseagency.com
**Subject:** reply to fax

**Ms. Hunter,**

**I am currently at my desk and if you call me now I can help you. I'm sorry if you have had trouble reaching me. You have been sending a fax to the judge's office, but I work in the district clerk's office. If you must send a fax to me, please send it to my fax number at (512)854-6627.**

**I was calling to inform you that your Affidavit of Inability to pay costs was not approved. We did not waive the filings fees, however, you were approved for a payment plan. Also, if you would like any citations to be issued, please request them in writing. Also, we do not accept fax filings so you will have to either mail in your letter requesting service, or eFile it if you are not able to file in person. Please be advised that you will be responsible for the citation and constable service fees, and these will be added to your payment plan if you would like to request service. I will be at my desk for rest of the day if you would like to call me with any questions, or feel free to reply to this email.**

**Brooke Daniel**
**53rd Court Clerk**
**Travis County District Clerk**
**1000 Guadalupe St., 3rd Floor**
**Austin, Texas 78701**
**Tel: (512)854-5881**
**Fax: (512)854-6627**

1

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
June 25, 2013

To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE:  D-1-GN-13001957 – THIRD FAX FOR JUNE 25, 2013**

Dear Ms. Daniels:

I received a voicemail message from you on June 25, 2013 at 3:59pm EST. You stated: "I had a couple of things to tell you about your case that I would like to tell you over the phone and not in a message." As you can see by my petition, I am defending an unconscionable government action and you work for that same government. I am very concerned at how much effort I had to exert just to get my petition docketed.

In response to your email which I have attached, the Texas Rules of Civil Procedure do not give you discretion under Rule 145(a) to refuse to docket, issue citations, and provide such other customary services.  However, Rule 145(d) allows the clerk to contest the affidavit by filing a written contest. See below.

Given that this is the law of Texas, I expect that you will treat me in accordance with the law.

As such, you must issue citations and provide such other customary services.


**RULE 145. AFFIDAVIT OF INDIGENCY**

(a) *Affidavit*. In lieu of paying or giving security for costs of an original action, a party who is unable to afford costs must file an affidavit as herein described. A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs.
**Upon the filing of the affidavit, the clerk must docket the action, issue citation and provide such other customary services as are provided any party**.

 (d) *Contest*. The defendant or the clerk may contest an affidavit that is not accompanied by an IOLTA certificate by filing a written contest giving notice to all parties and, in an appeal under

Texas Government Code, Section 28.052, notice to both the small claims court and the county clerk. A party's affidavit of inability that attests to receipt of government entitlement based on indigency may be contested only with respect to the veracity of the attestation. Temporary hearings will not be continued pending the filing of the contest. If the court finds at the first regular hearing in the course of the action that the party (other than a party receiving a governmental entitlement based on indigency) is able to afford costs, the party must pay the costs of the action. Reasons for such a finding must be contained in an order. Except with leave of court, no further steps in the action will be taken by a party who is found able to afford costs until payment is made. If the party's action results in monetary award, and the court finds sufficient evidence monetary award to reimburse costs, the party must pay the costs of the action. If the court finds that another party to the suit can pay the costs of the action, the other party must pay the costs of the action.

Sincerely,

/cch/

Chase Carmen Hunter

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
July 8, 2013

To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE:  D-1-GN-13001957**

Dear Ms. Daniels:

I am indigent and unable to afford to pay $14 on idocket.com just to look at the activity for my case.

Please, fax me a current activity listing for my case D-1-GN-13001957

Sincerely,

Chase Carmen Hunter

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
July 9, 2013

To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE:    SECOND REQUEST REGARDING D-1-GN-13001957**

Dear Ms. Daniels:

I am indigent and unable to afford to pay $14 on idocket.com just to look at the activity for my case.

Please, fax me a current activity listing for my case D-1-GN-13001957. My fax number is 703-997-5999.

Sincerely,

Chase Carmen Hunter

APPENDIX P. 000106

Chase Carmen Hunter
PO Box 9075
Fredericksburg, VA 22403
Tel: (707) 706-3647
Fax: (703) 997-5999
Email: ChaseH@ChaseAgency.com
July 11, 2013

To: Brook Daniels, Clerk of the 53rd Civil District

VIA FACSIMILE: 512-854-9332

**RE: THIRD REQUEST REGARDING D-1-GN-13001957**

Dear Ms. Daniels:

I am indigent and unable to afford to pay $14 on idocket.com just to look at the activity for my case.

Please, fax me a current activity listing for my case D-1-GN-13001957. My fax number is 703-997-5999.

Sincerely,

Chase Carmen Hunter

# TEXAS RULES OF CIVIL PROCEDURE

## RULE 145. AFFIDAVIT OF INDIGENCY

(a) *Affidavit*. In lieu of paying or giving security for costs of an original action, a party who is unable to afford costs must file an affidavit as herein described. A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs. Upon the filing of the affidavit, the clerk must docket the action, issue citation and provide such other customary services as are provided any party.

(d) *Contest*. The defendant [sic] or the clerk may contest an affidavit that is not accompanied by an IOLTA certificate by filing a written contest giving notice to all parties and, in an appeal under Texas Government Code, Section 28.052, notice to both the small claims court and the county clerk. A party's affidavit of inability that attests to receipt of government entitlement based on indigency may be contested only with respect to the veracity of the attestation. Temporary hearings will not be continued pending the filing of the contest. If the court finds at the first regular hearing in the course of the action that the party (other than a party receiving a governmental entitlement based on indigency) is able to afford costs, the party must pay the costs of the action. Reasons for such a finding must be contained in an order. Except with leave of court, no further steps in the action will be taken by a party who is found able to afford costs until payment is made. If the party's action results in monetary award, and the court finds sufficient evidence monetary award to reimburse costs, the party must pay the costs of the action. If the court finds that another party to the suit can pay the costs of the action, the other party must pay the costs of the action.

Chase Carmen Hunter
PO Box 42252 :: Fredericksburg, VA 22404
Tel: (707) 706-3647 :: Fax: (703) 997-5999
Email: chase_hunter@yahoo.com
Ocrober 22, 2014

Judge John Dietz
Travis County District Court, District 250
PO Box 1748 :: Austin, TX 78767

RE: URGENT REQUEST regarding Cause No. D-1-GN-13001957
VIA FACSIMILE: 512-854-9332
VIA CERTIFIED MAIL: 7013 2630 0000 5932 0601

Dear Judge Dietz:

I am attaching previously-filed copies of the following:

1. VERIFIED MOTION TO REINSTATE, VERIFIED MOTION TO DIRECT THE CLERK OF THIS COURT TO PROVIDE SERVICES TO THE PLAINTIFF, AND VERIFIED MOTION TO TRANSFER THIS CASE TO THE COURT OF APPEALS, and

2. *VERIFIED* NOTICE THAT CHASE CARMEN HUNTER HAS NOT FILED A NOTICE OF APPEAL OF CAUSE D-1-GN-13001957

I filed these documents about four weeks ago and two weeks ago, respectively. As of today's

date, you have not scheduled a hearing, as required, to consider my motion to reinstate.

I am asking you to comply with the various Texas laws and rules and, at a minimum,

promptly schedule a hearing to consider my motions including, but not limited to, my motion to

reinstate; or in the alternative, grant my motion to resinstate and all relief requested based on the

motion to reinstate, verified motion to direct the clerk of this court to provide services to the

plaintiff, and verified motion to transfer this case to the court of appeals.

Thank you,

Chase Hunter
Petitioner

Cause No. D-1-GN-13001957

CHASE CARMEN HUNTER,         IN THE DISTRICT COURT OF

                                TRAVIS COUNTY, TEXAS

           Plaintiff,

v.

ELEANOR KITZMAN etc. et al. ~~seq.~~ *ccttt*

            Defendants.    250TH JUDICIAL DISTRICT

VERIFIED MOTION TO REINSTATE, VERIFIED MOTION TO DIRECT THE

CLERK OF THIS COURT TO PROVIDE SERVICES TO THE PLAINTIFF, AND

VERIFIED MOTION TO TRANSFER THIS CASE TO THE COURT OF APPEALS

**CERTIFICATION.**

I, Chase Carmen Hunter, state under penalty of perjury that the

following facts and argument are true and correct.

_____*ccttt*_____        _____9/22/14_____

**STATEMENT OF THE ISSUES.**

1. The Plaintiff, Chase Carmen Hunter, ("Hunter") received notice

    from this Court stating that this Court sua sponte dismissed

    this lawsuit on August 25, 2014, pursuant to Travis County

    Texas District Court local rule 8.1 et seq.

-1-

2. Hunter files this Verified Motion to Reinstate pursuant to Texas Rule of Civil Procedure ("TRCP") 165a(3).

**STATEMENT OF FACTS.**

3. This lawsuit has not moved forward only because the Clerk of the Travis County Texas District Court, Amalia Rodriguez-Mendoza ("ARM"), has violated Texas laws, federal laws, and the United States Constitution and has refused to provide Hunter with services she is required by law to provide.

4. ARM has refused, among other things, to perform her ministerial duty in accordance with the Texas Rules of Civil Procedure ("TRCP") Rule 145(a). Because Hunter filed an affidavit of indigency, ARM is required to docket, issue citations, and provide such other customary services; but ARM has refused to perform these duties.

5. Hunter filed a motion with Judge Dietz directly on July 11, 2013, titled, "Verified Motion Directly Filed With Judge John K. Dietz For Writ Of Mandamus And Prohibition Directed To The Honorable Amalia Rodriguez-Mendoza, Clerk Of The District Court Of Travis County Texas" ("Verified Motion"). This was faxed to Judge Dietz on July 11, 2013, to 512-854-9332. This Verified Motion asked Judge Dietz to direct ARM to perform her ministerial duties pursuant to, inter alia, TRCP 145(a). But Judge Dietz failed to respond to this Verified Motion.

-2-

6. Hunter subsequently filed a petition with the Texas Third District Court of Appeals ("TTDCA"), case 03-13-00468-cv, in which she requested that the TTDCA direct the trial court to perform its ministerial duties and to direct the trial court to direct ARM to perform her ministerial duties. Hunter served Judge Dietz and ARM with copies of this petition. This petition was denied.

7. Hunter subsequently filed an appeal with the Supreme Court of Texas ("SCT") of the TTDCA's ruling in case 03-13-00468-cv. The SCT case number is 14-0136. Hunter served Judge Dietz and ARM with copies of this appeal. This appeal was denied.

8. Hunter subsequently filed a petition for a writ of certiorari with the Supreme Court of the United States ("SCOTUS") of the SCT ruling in case 14-0136. The SCOTUS case number is 14-5698. Hunter served Judge Dietz and ARM with copies of this petition for a writ of certiorari. This petition is pending.

9. Hunter filed a lawsuit against ARM and two of her employees in United States District Court ("USDC") case 1:14-cv-00510-LY on about June 2, 2014. Hunter served ARM and the two employees with copies of this lawsuit. This lawsuit seeks relief from, inter alia, ARM's refusal to abide by Texas laws, federal laws, and the United States Constitution in Travis County Texas District Court Case D-1-GN-13001957 which is this lawsuit. This USDC is pending.

-3-

10. Hunter filed an appeal in the United States Court of Appeals Fifth Circuit ("5th USCA") of actions taken in USDC case 1:14-cv-00510-LY. The 5th USCA case number is 14-50766 and is pending.

11. Hunter filed a petition in the Inter-American Organization of Human Rights in February 2013 and it is petition number P-1385-13. This petition seeks relief from violations of Hunter's human rights arising from, inter alia, the events described in TCDC case D-1-GN-13001957 which is this lawsuit. This petition is pending.

12. There are at least two additional lawsuits pending in United States District Courts and United States Courts of Appeals that seek relief from, inter alia, the events described in TCDC case D-1-GN-13001957, including ARM's refusal to comply with Texas laws, federal laws, and the United States Constitution.

**ARGUMENT AND PRAYER**

13. Pursuant to TRCP 165a(3), Hunter has shown that there is no failure of the plaintiff that resulted in this Court's sua sponte dismissal of this lawsuit pursuant to TCDC local rule 8.1. Hunter has established that she is not indifferent to prosecuting this lawsuit, that she is actively engaged in prosecuting this lawsuit, that the only reason why this lawsuit has not moved forward is due to ARM's refusal to

-4-

perform ministerial duties, that the plaintiff has made no mistake, and there has been no accident.

14. Hunter respectfully requests that this Court review this matter and (1) grant this motion, (2) direct ARM to provide all customary services provided any other party without charge, (3) enter an order that declares that ARM must provide Hunter with free access to idocket.com so that Hunter can view her case progress, or in the alternative, that ARM send Hunter a weekly statement by facsimile that accurately reflects the activity of this lawsuit and of TCDC case D-1-GN-13002576, (4) transfer this cause to the Court of Appeals, Third District Court of Appeals, and (5) award Hunter such further relief to which she may be entitled.

## VERIFICATION

I, Chase Carmen Hunter, state that the foregoing is true and correct.
IN WITNESS, Chase Carmen Hunter has signed this Verification below:

_____ (SEAL)
*Chase Carmen Hunter*

Commonwealth of Massachusetts
County of _____, to-wit:
Subscribed and sworn to before me this ____ day of _____
20____ , by Chase Carmen Hunter

My commission expires:
Registration Number:

CHRISTINA A. BORDEAU
Notary Public
Commonwealth of Massachusetts
My Commission Expires Feb. 10, 20__

-5-

Respectfully Submitted,

*cc/hh*

Chase Carmen Hunter
Plaintiff, pro se
340 S Lemon Ave #9039
Walnut, CA 91789
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

VERIFIED MOTION TO REINSTATE, VERIFIED MOTION TO DIRECT THE

CLERK OF THIS COURT TO PROVIDE SERVICES TO THE PLAINTIFF, AND

VERIFIED MOTION TO TRANSFER THIS CASE TO THE COURT OF APPEALS

has been sent as follows:

by facsimile to (512) 490-1064 on September 22, 2014, to:

Eleanor Kitzman, Julia Rathgeber, and Texas Department Of
Insurance
Texas Department of Insurance, MC113-2A
PO Box 149104
Austin, TX 78714-9104

By facsimile to (512) 477-2348 on September 22, 2014, to:

Cynthia A. Morales
Assistant Attorney General
PO Box 12548
Austin, TX 78711-2548

*cc/hh*
_____

Chase Carmen Hunter

-6-

Cause No. **D-1-GN-13001957**

CHASE CARMEN HUNTER,                    IN THE DISTRICT COURT OF

                                        TRAVIS COUNTY, TEXAS

              Plaintiff,

v.


ELEANOR KITZMAN etc. et seq.



              Defendants.    250TH JUDICIAL DISTRICT



## *VERIFIED*

## NOTICE THAT CHASE CARMEN HUNTER HAS NOT FILED A NOTICE OF APPEAL OF CAUSE D-1-GN-13001957

### CERTIFICATION.

I, Chase Carmen Hunter, state under penalty of perjury that the following facts and argument are true and correct. Executed on October 9, 2014.

*[signature]*


### POINTS RELIED UPON

On October 8, 2014, Chase Carmen Hunter ("Hunter") received a notice via email from the Texas Third

District Court of Appeal ("TTDCA") stating that the "appellant" had filed a notice of appeal. This notice did not state the name of the "appellant". However, Hunter believes that this Court believes that Hunter has filed a notice of appeal.

But Hunter has not filed a notice of appeal. Hunter currently has ongoing litigation in a United States District Court against Amalia Rodriguez-Mendoza, the Clerk of the Travis County Texas District Court ("TCTDC"), and two of her employees, which alleges that they have committed crimes against the United States, against Texas, against the public, and against Hunter in TCTDC case D-1-GN-13001957 by creating false documents and by refusing to comply with various laws for the sole purpose of blocking Hunter from accessing the TCTDC which is the venue in which Hunter has pursued judicial remedies to crimes committed by Texas public officials including, but not limited to, Eleanor Kitzman. If this Court has received notice from the TCTDC Clerk stating that Hunter has filed a notice of appeal, it is fraudulent. Hunter has NOT filed a

2

notice of appeal and has not filed anything that could be construed as a notice of appeal.

**<u>PRAYER</u>**

Hunter respectfully requests that this Court disregard any notice received from the TCTDC Clerk which falsely states that Hunter has filed a notice of appeal. Hunter respectfully requests that this Court notify the proper criminal justice authority to investigate Amalia Rodriguez-Mendoza for felonious actions as described herein.

Respectfully Submitted,

Chase Carmen Hunter
340 S Lemon Ave #9039
Walnut, CA 91789
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing
*VERIFIED* NOTICE THAT CHASE CARMEN HUNTER HAS NOT
FILED A NOTICE OF APPEAL OF CAUSE D-1-GN-13001957
has been sent as follows:

by facsimile to (512) 490-1064 on October 9, 2014, to:

Eleanor Kitzman, Julia Rathgeber, and Texas Department Of
Insurance
Texas Department of Insurance, MC113-2A
PO Box 149104
Austin, TX 78714-9104

By facsimile to (512) 477-2348 on October 9, 2014. to:

Cynthia A. Morales
Assistant Attorney General
PO Box 12548
Austin, TX 78711-2548

_____

Chase Carmen Hunter

FILED
September 29, 2014
Third Court of Appeals
Jeffrey D. Kyle
Clerk

Cause No. **D-1-GN-13001957**

CHASE CARMEN HUNTER,                    IN THE DISTRICT COURT OF

                                        TRAVIS COUNTY, TEXAS

                Plaintiff,

Filed in The District Court
of Travis County, Texas

SEP 2 6 2014

At _____ M.
Amalia Rodriguez-Mendoza, Clerk

v.


ELEANOR KITZMAN etc. et al. seq.


        Defendants.   250TH JUDICIAL DISTRICT


VERIFIED MOTION TO REINSTATE, VERIFIED MOTION TO DIRECT THE

CLERK OF THIS COURT TO PROVIDE SERVICES TO THE PLAINTIFF, AND

VERIFIED MOTION TO TRANSFER THIS CASE TO THE COURT OF APPEALS


**CERTIFICATION.**

I, Chase Carmen Hunter, state under penalty of perjury that the

following facts and argument are true and correct.

_____          9/22/14

**STATEMENT OF THE ISSUES.**

1. The Plaintiff, Chase Carmen Hunter, ("Hunter") received notice

   from this Court stating that this Court <u>sua</u> <u>sponte</u> dismissed

   this lawsuit on August 25, 2014, pursuant to Travis County

   Texas District Court local rule 8.1 et seq.


-1-

2. Hunter files this Verified Motion to Reinstate pursuant to Texas Rule of Civil Procedure ("TRCP") 165a(3).

**STATEMENT OF FACTS.**

3. This lawsuit has not moved forward only because the Clerk of the Travis County Texas District Court, Amalia Rodriguez-Mendoza ("ARM"), has violated Texas laws, federal laws, and the United States Constitution and has refused to provide Hunter with services she is required by law to provide.

4. ARM has refused, among other things, to perform her ministerial duty in accordance with the Texas Rules of Civil Procedure ("TRCP") Rule 145(a). Because Hunter filed an affidavit of indigency, ARM is required to docket, issue citations, and provide such other customary services; but ARM has refused to perform these duties.

5. Hunter filed a motion with Judge Dietz directly on July 11, 2013, titled, "Verified Motion Directly Filed With Judge John K. Dietz For Writ Of Mandamus And Prohibition Directed To The Honorable Amalia Rodriguez-Mendoza, Clerk Of The District Court Of Travis County Texas" ("Verified Motion"). This was faxed to Judge Dietz on July 11, 2013, to 512-854-9332. This Verified Motion asked Judge Dietz to direct ARM to perform her ministerial duties pursuant to, _inter alia_, TRCP 145(a). But Judge Dietz failed to respond to this Verified Motion.

-2-

6. Hunter subsequently filed a petition with the Texas Third District Court of Appeals ("TTDCA"), case 03-13-00468-cv, in which she requested that the TTDCA direct the trial court to perform its ministerial duties and to direct the trial court to direct ARM to perform her ministerial duties. Hunter served Judge Dietz and ARM with copies of this petition. This petition was denied.

7. Hunter subsequently filed an appeal with the Supreme Court of Texas ("SCT") of the TTDCA's ruling in case 03-13-00468-cv. The SCT case number is 14-0136. Hunter served Judge Dietz and ARM with copies of this appeal. This appeal was denied.

8. Hunter subsequently filed a petition for a writ of certiorari with the Supreme Court of the United States ("SCOTUS") of the SCT ruling in case 14-0136. The SCOTUS case number is 14-5698. Hunter served Judge Dietz and ARM with copies of this petition for a writ of certiorari. This petition is pending.

9. Hunter filed a lawsuit against ARM and two of her employees in United States District Court ("USDC") case 1:14-cv-00510-LY on about June 2, 2014. Hunter served ARM and the two employees with copies of this lawsuit. This lawsuit seeks relief from, inter alia, ARM's refusal to abide by Texas laws, federal laws, and the United States Constitution in Travis County Texas (TCDC) x̲e̲c̲f̲t̲h̲ District Court ꝰCase D-1-GN-13001957 which is this lawsuit. case x̲e̲c̲f̲t̲h̲ This USDC ꝰis pending.

-3-

10. Hunter filed an appeal in the United States Court of Appeals Fifth Circuit ("5th USCA") of actions taken in USDC case 1:14-cv-00510-LY. The 5th USCA case number is 14-50766 and is pending.

11. Hunter filed a petition in the Inter-American Organization of Human Rights in February 2013 and it is petition number P-1385-13. This petition seeks relief from violations of Hunter's human rights arising from, inter alia, the events described in TCDC case D-1-GN-13001957 which is this lawsuit. This petition is pending.

12. There are at least two additional lawsuits pending in United States District Courts and United States Courts of Appeals that seek relief from, inter alia, the events described in TCDC case D-1-GN-13001957, including ARM's refusal to comply with Texas laws, federal laws, and the United States Constitution.

**ARGUMENT AND PRAYER**

13. Pursuant to TRCP 165a(3), Hunter has shown that there is no failure of the plaintiff that resulted in this Court's sua sponte dismissal of this lawsuit pursuant to TCDC local rule 8.1. Hunter has established that she is not indifferent to prosecuting this lawsuit, that she is actively engaged in prosecuting this lawsuit, that the only reason why this lawsuit has not moved forward is due to ARM's refusal to

-4-

perform ministerial duties, that the plaintiff has made no mistake, and there has been no accident.

14. Hunter respectfully requests that this Court review this matter and (1) grant this motion, (2) direct ARM to provide all customary services provided any other party without charge, (3) enter an order that declares that ARM must provide Hunter with free access to idocket.com so that Hunter can view her case progress, or in the alternative, that ARM send Hunter a weekly statement by facsimile that accurately reflects the activity of this lawsuit and of TCDC case D-1-GN-13002576, (4) transfer this cause to the Court of Appeals, Third District Court of Appeals, and (5) award Hunter such further relief to which she may be entitled.

## VERIFICATION

I, Chase Carmen Hunter, state that the foregoing is true and correct.
IN WITNESS, Chase Carmen Hunter has signed this Verification below:

_____ (SEAL)
*Chase Carmen Hunter*

Commonwealth of Massachusetts
County of _____, to-wit:
Subscribed and sworn to before me this _____ day of _____
20____ , by Chase Carmen Hunter

My commission expires:
Registration Number:

CHRISTINA A. BORDEAU
Notary Public
Commonwealth of Massachusetts
My Comm. Exp Feb 9 2018

-5-

Respectfully Submitted,

*cc f th*

Chase Carmen Hunter
Plaintiff, pro se
340 S Lemon Ave #9039
Walnut, CA 91789
Tel: 707-706-3647
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing VERIFIED MOTION TO REINSTATE, VERIFIED MOTION TO DIRECT THE CLERK OF THIS COURT TO PROVIDE SERVICES TO THE PLAINTIFF, AND VERIFIED MOTION TO TRANSFER THIS CASE TO THE COURT OF APPEALS has been sent as follows:

by facsimile to (512) 490-1064 on September 22, 2014, to:

Eleanor Kitzman, Julia Rathgeber, and Texas Department Of Insurance
Texas Department of Insurance, MC113-2A
PO Box 149104
Austin, TX 78714-9104

By facsimile to (512) 477-2348 on September 22, 2014, to:

Cynthia A. Morales
Assistant Attorney General
PO Box 12548
Austin, TX 78711-2548

*cc f th*
_____

Chase Carmen Hunter

-6-



# COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
www.txcourts.gov/3rdcoa.aspx
(512) 463-1733

J. WOODFIN JONES, CHIEF JUSTICE                        JEFFREY D. KYLE, CLERK
DAVID PURYEAR, JUSTICE
BOB PEMBERTON, JUSTICE
JEFF L. ROSE, JUSTICE
MELISSA GOODWIN, JUSTICE
SCOTT K. FIELD, JUSTICE

November 24, 2014

Ms. Chase Carmen Hunter                    Ms. Cynthia A. Morales
340 S. Lemon Ave. #9039                    Assistant Attorney General
Walnut, CA 91789                         Financial Litigation, Tax, and Charitable Trusts
* DELIVERED VIA E-MAIL *            Division
                                       P. O. Box 12548 (MC 017-6)
                                       Austin, TX 78711
                                       * DELIVERED VIA E-MAIL *

RE:      Court of Appeals Number:      03-14-00737-CV
          Trial Court Case Number:      D-1-GN-13-001957

Style:      Chase Carmen Hunter
          v. Eleanor Kitzman, Julia Rathgeber, and Texas Department of Insurance

Dear Counsel and Ms. Hunter:

The Court has been advised that appellant has given notice of appeal. The cause in this Court will bear the number and style shown above. Appellant is requested to forward the $195.00 filing fee and a docketing statement to this Court on or before **December 04, 2014**. *See* Tex. R. App. P. 5, 32.1. If appellant has not already done so, he must make a written request to the clerk and the court reporter and make arrangements for payment of the record within ten days of the receipt of this notice. *See* Tex. R. App. P. 34.6(b)(1).

Very truly yours,

JEFFREY D. KYLE, CLERK

BY: *Courtland Crocker*
          Courtland Crocker, Deputy Clerk

cc:      The Honorable Amalia Rodriguez-Mendoza

APPENDIX P. 000126

**From:**                  US_Postal_Service@usps.com
**Sent:**                  Thursday, June 6, 2013 11:34 AM
**To:**                     chase_hunter@yahoo.com
**Subject:**           USPS Shipment Info for 9505500001113155000188

This is a post-only message. Please do not respond.

CHASE hunter has requested that you receive a Track & Confirm update, as shown below.

Track & Confirm e-mail update information provided by the U.S. Postal Service.

Label Number: 9505500001113155000188

Service Type: USPS Tracking™

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Out for Delivery | AUSTIN, TX 78701 | June 6, 2013 10:05 am |
| Sorting Complete | AUSTIN, TX 78701 | June 6, 2013 9:55 am |
| Arrival at Post Office | AUSTIN, TX 78701 | June 6, 2013 8:30 am |
| Depart USPS Sort Facility | AUSTIN, TX 78710 | June 6, 2013 |
| Processed through USPS Sort Facility | AUSTIN, TX 78710 | June 6, 2013 1:17 am |
| Depart USPS Sort Facility | SANDSTON, VA 23150 | June 5, 2013 |
| Processed at USPS Origin Sort Facility | SANDSTON, VA 23150 | June 4, 2013 11:06 pm |
| Acceptance (APC) | STAFFORD, VA 22554 | June 4, 2013 4:01 pm |

Reminder: Track & Confirm by email

Date of email request: June 5, 2013

Future activity will continue to be emailed for up to 2 weeks from the Date of Request shown above. If you need to initiate the Track & Confirm by email process again at the end of the 2 weeks, please do so at the USPS Track & Confirm web site at http://www.usps.com/shipping/trackandconfirm.htm

APPENDIX P. 000127



Amalia Rodriguez-Mendoza

District Clerk, Travis County

Travis County Courthouse Complex

P. O. Box 679003

Austin, Texas 78767

June 19, 2013

CHASE CARMEN HUNTER
PO BOX 9075
FREDERICKSBURG, VIRGINIA 22403

RE: Agreement Letter

Cause No. D-1-GN-13-001957    Style: HUNTER VS COMMISSIONER OF INSU

Dear Mrs. Chase Carmen Hunter,

Pursuant to our conversation on June 07, 2013, you agreed to pay the amount of $252.00 by making monthly payments of $40.00 the first of each month with the initial payment beginning July 11, 2013 . Upon receipt of these payments, your financial obligation of $252.00 to the District Clerk's Office of Travis County will be completed, unless there are additional services rendered.

Please sign below to signify that you are in agreement, pursuant to Rule 11 TRCP.

Thank you for your cooperation, and if I can be of further assistance, please feel free to contact me at (512) 854-3651.

Respectfully,

Cristina M.
Accounting Clerk

_____

Mrs. Chase Carmen Hunter

L48 - 000000455

APPENDIX P. 000128